# IN THE SUPREME COURT OF TEXAS

═══════════

No. 14-0692

═══════════

THE STATE OF TEXAS, PETITIONER,

v.

ONE (1) 2004 LINCOLN NAVIGATOR, VIN # 5LMFU27RX4LJ28242,
RESPONDENT

═══════════════════════════════════════════

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE THIRTEENTH DISTRICT OF TEXAS

═══════════════════════════════════════════

**Argued November 4, 2015**

JUSTICE BROWN  delivered the opinion of the Court, in which JUSTICE GREEN, JUSTICE WILLETT, JUSTICE GUZMAN, and JUSTICE BOYD joined, and in which CHIEF JUSTICE HECHT, JUSTICE JOHNSON, and JUSTICE LEHRMANN joined in all but Part IV.

JUSTICE WILLETT filed a concurring opinion.

JUSTICE DEVINE filed a concurring opinion, in which CHIEF JUSTICE HECHT, JUSTICE JOHNSON, and JUSTICE LEHRMANN joined.

In this civil-forfeiture case, police officers arrested Miguel Herrera and seized his Lincoln Navigator. After finding drugs during an inventory search of the vehicle, the state filed a notice of seizure and intended forfeiture under Chapter 59 of the Code of Criminal Procedure, claiming that

the Navigator was "contraband" under the statute.[1] Herrera argued that the stop leading up to the arrest was unlawful and therefore any evidence obtained pursuant to the subsequent search should be excluded in the civil-forfeiture proceeding. The trial court agreed, finding the vehicle search to be illegal and "denying the seizure."

The court of appeals affirmed, holding that (1) article 59.03(b)[2] precludes the state from initiating a civil-forfeiture proceeding based on an illegal search; (2) the stop leading up to the arrest was unlawful because the officers did not have reasonable suspicion; and (3) Herrera was entitled to relief because, after exclusion of the evidence found in the vehicle, the state was left with no evidence that the Navigator was contraband. *State v. One (1) 2004 Lincoln Navigator*, No. 13-13-00484-CV, 2014 WL 4262636, at *4–8 (Tex. App.—Corpus Christi Aug. 28, 2014) (mem. op.). This Court granted review to decide whether an illegal seizure requires exclusion in a Chapter 59 civil-forfeiture proceeding. We hold that it does not. Accordingly, we reverse and remand.

## I

Texas law permits the state to obtain by seizure and forfeiture certain property qualifying as "contraband." *See* CODE CRIM. PROC. art. 59.02(a). To exercise its forfeiture power, the state must commence a forfeiture proceeding under the Code of Criminal Procedure. *See id.* art. 59.04. Though found in the criminal-procedure code, such forfeiture proceedings are distinctly civil in nature:

---

[1] Chapter 59 defines "contraband" subject to forfeiture to include any property "used or intended to be used in the commission of . . . any felony under [the] Texas Controlled Substances Act." TEX. CODE CRIM. PROC. art. 59.01(2)(B)(i).

[2] Code of Criminal Procedure article 59.03(b)(4) provides that "[s]eizure of property subject to forfeiture may be made without warrant if . . . seizure was incident to a lawful arrest, lawful search, or lawful search incident to arrest."

"parties must comply with the rules of pleading as required in civil suits," *id.* art. 59.05(a), cases "proceed to trial in the same manner as in other civil cases," and "[t]he state has the burden of proving by a preponderance of the evidence that property is subject to forfeiture," *id.* art. 59.05(b). If the state carries its burden and "the court finds that all or any part of the property is subject to forfeiture, the judge shall forfeit the property to the state." *Id.* art. 59.05(e).

Yet while forfeiture proceedings are civil in nature, they frequently arise out of criminal proceedings in which property was seized. At first glance, therefore, they often appear to implicate the constitutional right against unreasonable searches and seizures. *See* U.S. CONST. amend. IV; TEX. CONST. art. I, § 9. In the criminal-law context, this right is generally vindicated by the "exclusionary rule," which provides for suppression of evidence obtained in an unconstitutional search or seizure. But the application of this judge-made rule is usually confined by its rationale to the criminal-law context—"[t]he criminal is to go free because the constable has blundered." *See People v. Defore*, 242 N.Y. 13, 21, 150 N.E. 585, 587 (1926) (Cardozo, J.). It does not normally apply in civil cases.

In this case, the court of appeals did not address whether the exclusionary rule applies in civil-forfeiture proceedings, holding only that "the civil[-]forfeiture statute 'does not authorize illegal police conduct,'" and thus that "'[r]egardless of whether the exclusionary rule applies, law enforcement agents cannot seize property if their actions leading up to the seizure are illegal.'" *Lincoln Navigator*, 2014 WL 4262636, at *4 (quoting *State v. Thirty Thousand Six Hundred Sixty Dollars & no/100 ($30,660.00)*, 136 S.W.3d 392, 397 (Tex. App.—Corpus Christi 2004, pet. denied)

(en banc)).[3] While illegal actions leading up to a search or seizure generally require exclusion under the exclusionary rule in a criminal proceeding,[4] this Court has "never decided whether the exclusionary rule applies to civil[-]forfeiture proceedings." *$217,590.00*, 18 S.W.3d at 632 n.1; *see also Hardy v. State*, 102 S.W.3d 123, 129 n.3 (Tex. 2003) (in the civil-forfeiture context, "we have yet to decide whether, if the State lack[s] probable cause to obtain a search warrant, evidence obtained pursuant to that warrant might be subject to suppression under the exclusionary rule.").

Deciding that law enforcement cannot illegally seize property subject to forfeiture is therefore not the end of the analysis. Even assuming that Chapter 59 prohibits unlawful seizure, concluding that an exclusionary rule (or some functional equivalent) applies in civil-forfeiture proceedings remains a necessary prerequisite to exclusion. *Cf. Illinois v. Gates*, 462 U.S. 213, 223 (1983) ("The question whether the exclusionary rule's *remedy* is appropriate in a particular context has long been regarded as an issue separate from the question whether the Fourth Amendment rights of the party seeking to invoke the rule were violated by police conduct." (emphasis added)). In other words,

---

[3] At least one other court has followed the Thirteenth Court of Appeals. *See $763.30 U.S. Currency v. State*, No. 09-05-437-CV, 2007 WL 474967, at *1 (Tex. App.—Beaumont Feb. 15, 2007, no pet.) (mem. op.). *But see State v. One Piece of Prop. Located at 212 Sendero Drive, Garland*, No. 05-92-02292-CV, 1993 WL 96398, at *3 (Tex. App.—Dallas Mar. 31, 1993, no writ) (not designated for publication) (holding "that the statute does not require that the State must prove how the seizure was made in order to obtain forfeiture of the property."). A number of other courts of appeals have assumed, without deciding, that the exclusionary rule applies in civil-forfeiture proceedings. *See, e.g.*, *$18,325.00 in U.S. Currency v. State*, No. 11-13-00253-CV, 2015 WL 3799296, at *1 (Tex. App.—Eastland June 18, 2015, no pet.); *State v. Five Thousand Five Hundred Dollars in U.S. Currency*, 296 S.W.3d 696, 701 n.2 (Tex. App.—El Paso 2009, no pet.); *$13,720.00 in U.S. Currency v. State*, No. 05-03-01670-CV, 2004 WL 2294389, at *1 (Tex. App.—Dallas Oct. 13, 2004, no pet.) (mem. op.).

[4] "Evidence obtained as the result of an unreasonable search and seizure is subject to exclusion in a criminal proceeding." *State v. $217,590.00 in U.S. Currency*, 18 S.W.3d 631, 632 n.1 (Tex. 2000). In Texas, the exclusionary rule has been codified and expanded: "[n]o evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any *criminal* case." CODE CRIM. PROC. art. 38.23(a) (emphasis added). Each exclusionary rule generally applies only to criminal proceedings.

4

merely finding that the law enforcement agents' search (*conduct*) was illegal—or otherwise not in compliance with Chapter 59—neither automatically nor inevitably compels the conclusion that exclusion is the proper *remedy*. Thus, after finding the officers' conduct to be illegal, the court of appeals should have asked whether exclusion was the proper remedy. In declining to do so, the court of appeals prematurely assumed that illegality equates to inadmissibility. *See Lincoln Navigator*, 2014 WL 4262636, at *4. The question of whether the court of appeals' assumption is nonetheless correct is now squarely before this Court.

**II**

"Both the Fourth Amendment to the United States Constitution and Article I, section 9 of the Texas Constitution prohibit unreasonable searches and seizures and require the exclusion of evidence obtained in violation of that prohibition in *criminal* trials." *$217,590.00*, 18 S.W.3d at 636 (Abbott, J., concurring) (emphasis added). The Fourth Amendment prohibition has long been vindicated by the exclusionary rule: "a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved." *United States v. Calandra*, 414 U.S. 338, 348 (1974); *see also Weeks v. United States*, 232 U.S. 383, 398 (1914). In Texas, an expanded version of that common-law rule has been codified to ensure that "[n]o evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any *criminal* case." CODE CRIM. PROC. art. 38.23(a) (emphasis added).

5

By its express terms, article 38.23 applies only to criminal cases. *See id.* But less clear is whether the constitutional exclusionary rule—as a common-law, judge-made rule—might have broader application. *See Hardy*, 102 S.W.3d at 129 n.3. That rule, of course, appears nowhere in our state constitution, nor is it "a self-executing mandate implicit in the Fourth Amendment itself." *See Davis v. United States*, 564 U.S. 229, 237 (2011). Rather, it is a judge-made "deterrent sanction that bars the prosecution from introducing evidence obtained by way of a [constitutional] violation." *Id.* at 231–32. Although courts have "applied the exclusionary rule primarily to deter constitutional violations," it has also been held to apply to "exclude[] evidence ar[ising] directly out of statutory violations that implicate[] important Fourth and Fifth Amendment interests." *Sanchez-Llamas v. Oregon*, 548 U.S. 331, 348 (2006).

To be sure, "[t]he wrong condemned by the [Fourth] Amendment is 'fully accomplished' by the unlawful search or seizure itself," *United States v. Leon*, 468 U.S. 897, 906 (1984)—"the governments' use of evidence obtained in violation of the Fourth Amendment does not itself violate the Constitution," *Pa. Bd. of Prob. & Parole v. Scott*, 524 U.S. 357, 362 (1998). Exclusion, therefore, does not protect the defendant against a constitutional violation, and it "is neither intended nor able to 'cure the invasion of the defendant's rights which he has already suffered.'" *Leon*, 468 U.S. at 906 (quoting *Stone v. Powell*, 428 U.S. 465, 540 (1976) (White, J., dissenting)). Instead, "[t]he rule's sole purpose . . . is to deter future Fourth Amendment violations." *Davis*, 564 U.S. at 236–37; *see also Elkins v. United States*, 364 U.S. 206, 217 (1960) ("The rule is calculated to prevent, not to repair.").

"Despite its broad deterrent purpose," however, "the exclusionary rule has never been interpreted to proscribe the use of illegally seized evidence in all proceedings or against all persons." *Calandra*, 414 U.S. at 348; *see also Hudson v. Michigan*, 547 U.S. 586, 591 (2006) ("Suppression of evidence . . . has always been [a] last resort, not [a] first impulse."). Because the rule's "sole purpose" is to deter certain constitutional violations, the United States Supreme Court has carefully "limited the rule's operation to situations in which this purpose is 'thought most efficaciously served'[—][w]here suppression fails to yield 'appreciable deterrence,' exclusion is 'clearly unwarranted.'" *Davis*, 564 U.S. at 237 (original alterations and citations omitted). But deterrent value alone, while a "necessary condition for exclusion," is not a sufficient one. *Hudson*, 547 U.S. at 596. Indeed, "the exclusionary rule has never been applied except 'where its deterrence benefits outweigh its substantial social costs.'" *Id.* at 594 (citation omitted). And the social costs are indeed substantial:

> Exclusion exacts a heavy toll on both the judicial system and society at large. It almost always requires courts to ignore reliable, trustworthy evidence bearing on guilt or innocence. And its bottom-line effect, in many cases, is to suppress the truth and set the criminal loose in the community without punishment. Our cases hold that society must swallow this bitter pill when necessary, but only as a "last resort."

*Davis*, 564 U.S. at 237 (citations omitted). While these social costs are most often framed in the criminal context, the underlying rationale extends to the civil context: the application of the exclusionary rule hampers some of the judiciary's essential functions—fact-finding and truth-seeking. *See Leon*, 468 U.S. at 907 ("'Our cases have consistently recognized that unbending application of the exclusionary sanction to enforce ideals of governmental rectitude would impede unacceptably the truth-finding functions of judge and jury.'" (quoting *United States v. Payner*, 447

7

U.S. 727, 734 (1980))); *see also United States v. Janis*, 428 U.S. 433, 448–49 (1976) ("Jurists and scholars uniformly have recognized that the exclusionary rule imposes a substantial cost on the societal interest in law enforcement by its proscription of what concededly is relevant evidence."); *United States v. Havens*, 446 U.S. 620, 626 (1980) ("There is no gainsaying that arriving at the truth is a fundamental goal of our legal system.").

"Recognizing these costs, [the Supreme Court] ha[s] repeatedly declined to extend the exclusionary rule to proceedings other than criminal trials." *See Scott*, 524 U.S. at 363 (declining to apply rule in parole-revocation hearing); *INS v. Lopez-Mendoza*, 468 U.S. 1032, 1050 (1984) (declining to apply rule in civil-deportation proceeding); *Janis*, 428 U.S. at 454 (declining to apply rule in civil-tax proceeding); *Calandra*, 414 U.S. at 351–52 (declining to apply rule in grand-jury proceeding). In this case, as in those, the exclusion of admittedly relevant evidence imposes a substantial social cost. Here, the vehicle and the evidence found within it are indisputably relevant—if the state shows by a preponderance of the evidence that the vehicle was "used or intended to be used in the commission of" a felony under the Controlled Substances Act, then it is "contraband." *See* CODE CRIM. PROC. arts. 59.01(2)(B)(i) & 59.05(b). If it qualifies as contraband under Chapter 59, then it "is subject to seizure and forfeiture." *See id.* art. 59.02(a). Here, therefore, the "evidence sought to be excluded is . . . reliable and . . . the most probative information bearing" on the case; it "in no way [has] been rendered untrustworthy by the means of its seizure." *See Powell*, 428 U.S. at 490 (citation and internal quotation marks omitted). Accordingly, application of the

exclusionary rule in this context would result in exclusion of evidence central to "the truth-finding functions of judge and jury." *See Payner*, 447 U.S. at 734.[5]

And the deterrence rationale—at least as it relates to civil forfeiture in Texas—is marginal at best. Most importantly, the Fourth Amendment and state exclusionary rule together apply to broadly exclude illegally obtained evidence in the criminal-law context. *See Mapp v. Ohio*, 367 U.S. 643, 655 (1961) (applying U.S. CONST. amend. IV); CODE CRIM. PROC. art. 38.23. Thus, "local law enforcement official[s] [are] already 'punished' by the exclusion of [illegally obtained] evidence in [both] state . . . [and] federal criminal trial[s], . . . so that the entire criminal enforcement process, which is the concern and duty of these officers, is frustrated." *See Janis*, 428 U.S. at 448.[6] "If the exclusionary rule is the 'strong medicine' that its proponents claim it to be, then its use in [the criminal-law context] must be assumed to be a substantial and efficient deterrent." *Id.* at 453. Given this "substantial and efficient deterrent," any additional deterrence provided by also applying the rule in the civil-forfeiture context is marginal and "surely does not outweigh the cost to society of extending the rule to that [context]." *See id.* at 453–54.[7]

---

[5] Additionally, applying the exclusionary rule here ostensibly results in returning a vehicle "used or intended to be used" in the commission of drug crimes to its owner. *See* CODE CRIM. PROC. art. 59.01(2)(B)(i). Applying the rule to Chapter 59, therefore, would likely have the undesirable effect of politely handing such vehicles—or computers, money, weapons, or whatever else—back to those who might put them to criminal use. *Cf. Hudson*, 547 U.S. at 591 (noting that one of the substantial social costs of the rule that cautions against its expansion is "setting the guilty free and the dangerous at large"); *Lopez-Mendoza*, 468 U.S. at 1047 ("The constable's blunder may allow the criminal to go free, but we have never suggested that it allows the criminal to continue in the commission of an ongoing crime.").

[6] Moreover, under article 59.05(d), dismissal or acquittal in an underlying criminal case creates a presumption of nonforfeitability, which indirectly imports some of the exclusionary rule's deterrent effect. *See* CODE CRIM. PROC. art. 59.05(d); *see also $30,660.00*, 136 S.W.3d at 413 (Castillo, J., dissenting).

[7] To be sure, there are other effective deterrents to police misconduct. Potential "civil liability [under § 1983] is an effective deterrent here," as is the "increasing professionalism of police forces, including a new emphasis on internal police discipline." *See Hudson*, 547 U.S. at 598. Indeed, under § 1983, courts may award punitive damages (in addition

Herrera argues that the Supreme Court's decision in *One 1958 Plymouth Sedan v. Pennsylvania*, where the Court held that the exclusionary rule applied to a civil-forfeiture statute that was "criminal in nature," compels a different conclusion. *See* 380 U.S. 693, 697–98 (1965). We disagree. The forfeiture provision in *Plymouth Sedan* "requir[ed] the determination that the criminal law ha[d] been violated." *See id.* at 701. This, in addition to the fact that the forfeiture could "result in even greater punishment than the criminal prosecution," led the Court to find that "the forfeiture [was] clearly a penalty for the criminal offense." *See id.* at 700–01. The Court thus considered *that* civil-forfeiture provision "criminal," *id.*[8]—even noting 10 years later that it "never has applied [the exclusionary rule] to exclude evidence from a civil proceeding, federal or state," *Janis*, 428 U.S. at 447. In *Janis*, the Court confirmed a narrow reading of *Plymouth Sedan*, explaining that it had "expressly relied on the fact that 'forfeiture is clearly a penalty for the criminal offense.'" *See id.* at 447 n.17 (quoting *Plymouth Sedan*, 380 U.S. at 701). And "[a]lthough there is language in [the Court's] cases to the contrary," it has made clear that "civil *in rem* forfeiture is not punishment of the wrongdoer for his criminal offense." *See United States v. Ursery*, 518 U.S. 267, 293 (1996) (Kennedy, J., concurring) (citing *Plymouth Sedan*, 380 U.S. at 700).

---

to compensatory damages) "when the defendant's conduct is shown to be motivated by evil motive or intent, *or* when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983) (emphasis added); *see also Williams v. Kaufman Cty.*, 352 F.3d 994, 1015 (5th Cir. 2003) (concluding that "ignoring the limited scope of search authorized by [a] warrant, and disregarding the Fourth Amendment rights of plaintiffs as long-established by the Supreme Court and recognized by this Court, constitutes reckless indifference to such rights" and thus holding punitive damages were appropriate). Such "punitive damages not only punish [the officer] for his conduct; they serve as instructive warnings to [others]"—they *deter. See Williams*, 352 F.3d at 1016.

[8]  Indeed, the *Plymouth Sedan* Court "consider[ed] the important question of whether the constitutional exclusionary rule . . . applies to forfeiture proceedings *of the character involved here*. Id.* at 696 (emphasis added). It did not decide whether the exclusionary rule applied to *all* civil-forfeiture proceedings.

Importantly, moreover, the legal and jurisprudential landscapes have changed significantly since *Plymouth Sedan* was decided in 1965, weakening some of the opinion's underpinnings. For one thing, *Plymouth Sedan* was decided at "a time when [the Supreme Court's] exclusionary-rule cases were not nearly so discriminating in their approach to the doctrine," yet more recently the Court has "abandoned the old, 'reflexive' application of the doctrine, and imposed a more rigorous weighing of its costs and deterrence benefits." *See Davis*, 564 U.S. at 237, 238. Thus, the Court's more recent jurisprudence, and its now well-established cost-benefit analysis, controls our analysis. And, as discussed, the "deterrences against [illegal searches] are substantial—incomparably greater than the factors deterring warrantless entries when *Mapp* [and *Plymouth Sedan*] [were] decided." *See Hudson*, 547 U.S. at 599.

Finally, in *Plymouth Sedan*, the forfeiture proceeding's "object, like a criminal proceeding, [was] to penalize for the commission of an offense against the law." *See* 380 U.S. at 700. Chapter 59 forfeitures, on the other hand, are expressly civil and non-punitive; indeed, "[i]t is the intention of the legislature that asset forfeiture is *remedial* in nature and *not* a form of punishment." *See* CODE CRIM. PROC. art. 59.05(e) (emphasis added). Article 59.01(2)(B) defines as contraband items "used or intended to be used in the commission of" specific crimes. While this provision certainly relates to criminal activity, it does not require any proof that a person committed a crime—it only requires that the state prove by a preponderance of the evidence that the *property* is contraband. *See id.* arts. 59.01(2), 59.02(a), 59.05(b). In other words, "[a] [Chapter 59] civil[-]forfeiture action is an *in rem* proceeding against *contraband*," not a quasi-criminal proceeding against a person. *See State v. Silver Chevrolet Pickup*, 140 S.W.3d 691, 692 (Tex. 2004) (per curiam) (emphasis added); CODE CRIM.

11

PROC. art. 59.05(d) ("A final conviction for an underlying offense is not a requirement for forfeiture under this chapter."). In light of the Court's more recent jurisprudence narrowly confining the exclusionary rule to those criminal cases where it has actual deterrent value, therefore, we hold that the exclusionary rule does not apply to Chapter 59 proceedings. In this context, because "suppression [of illegally-seized evidence under Chapter 59] fails to yield 'appreciable deterrence,'" constitutional exclusion is unwarranted. *See Davis*, 564 U.S. at 237.

### III

In addition, Chapter 59 does not effectively import an exclusionary rule. Chapter 59 provides that "[i]f the court finds that all or any part of the property is subject to forfeiture, the judge *shall* forfeit the property to the state." CODE CRIM. PROC. art. 59.05(e) (emphasis added). As already noted, "contraband" is "subject to . . . forfeiture," *id.* art. 59.02(a), and includes any property "used or intended to be used in the commission of . . . any felony under [the] Texas Controlled Substances Act," *id.* art. 59.01(2)(B)(i). A forfeiture proceeding "proceed[s] to trial in the same manner as in other civil cases," and "[t]he state has the burden of proving by a preponderance of the evidence that property is subject to forfeiture." *Id.* art. 59.05(b). While article 59.04 contains various notification and procedural requirements with which the state must comply before a judge allows the forfeiture proceeding to move forward, *id.* arts. 59.04(a)–(*l*), for forfeiture to be proper, the statute requires only that the state prove by a preponderance of the evidence that the property at issue is contraband.[9]

---

[9] As part of this burden, the state must show "probable cause for seizing a person's property," which we have defined as "a reasonable belief that a substantial connection exists between the property to be forfeited and the criminal activity defined by the statute." *Fifty-Six Thousand Seven Hundred Dollars in U.S. Currency v. State ($56,700)*, 730 S.W.2d 659, 661 (Tex. 1987) (internal quotation marks omitted). This "means that the State must prove, considering all the evidence, that it was more reasonably probable than not that the seized money was either intended for use in, or

But, as Herrera points out, the statute also appears to limit how the state may seize the property to be forfeited. As is relevant here, article 59.03(b) provides that "[s]eizure of property subject to forfeiture may be made without warrant if . . . the seizure was incident to a lawful arrest, lawful search, or lawful search incident to arrest." *Id.* art. 59.03(b)(4). The state argues that article 59.03 is "a *grant* of authority to peace officers, ensuring they are statutorily authorized to seize contraband in addition to their other powers." Therefore, it contends, article 59.03 does not speak at all to the elements of forfeitability. Herrera, on the other hand, argues that article 59.03 must be read to limit the officers' authority and "[t]he state is therefore required to show that the taking of property meets [article 59.03's] requirements to be labeled a 'seizure' for forfeiture purposes."

As a preliminary point, we note a fundamental error in the court of appeals' analysis and holding. The court of appeals held that "[o]nce the trial court granted the motion to suppress, the State could not present any evidence regarding the sole matter that was at issue in the proceeding: whether the property was subject to forfeiture." *Lincoln Navigator*, 2014 WL 4262636, at *8. Thus, because the court of appeals held the stop leading up to the arrest was unlawful, it also found that the *evidence* found in the subsequent inventory search had to be excluded. *See id.* The court of appeals reads article 59.03(b) too broadly. Article 59.03(b) only concerns itself with the "[s]eizure

derived from, a violation of the offenses enumerated in the forfeiture statute." *See $9,050.00 in U.S. Currency v. State*, 874 S.W.2d 158, 161 (Tex. App.—Houston [14th Dist.] 1994, writ denied); *see also State v. $11,014.00*, 820 S.W.2d 783, 784–85 (Tex. 1991) (per curiam). "Once the State has established probable cause to initiate a forfeiture proceeding, the State has met its burden . . . ." *Hardy*, 102 S.W.3d at 129. While a property owner may seek summary judgment on the ground that the state does not have probable cause, to prevail he must "conclusively prove[] that none of the officers had [a reasonable] belief [that a substantial connection exists between the property and criminal activity]." *See State v. Ninety Thousand Two Hundred Thirty-Five Dollars & No Cents in U.S. Currency ($90,235)*, 390 S.W.3d 289, 293 (Tex. 2013). Only then does "the burden shift to the State to respond and raise a material fact question about whether they did." *See id.*

13

of property subject to forfeiture"; it does not purport to limit officer conduct as to evidence obtained for the purpose of proving that property is subject to forfeiture. Therefore, regardless of article 59.03(b)'s potential limiting effect, it does not preclude the state's use of evidence—whether seized lawfully or not—to prove that property is subject to forfeiture.

That said, the question is whether the "may be made" language in article 59.03(b) indeed limits officer conduct. The state argues that "may" as used in the statute is permissive rather than limiting—and so that term truly means "may" rather than "may only." But reading "may" as not limiting tends to render the provision meaningless. If a peace officer may seize lawfully, but may also seize unlawfully, then articles 59.03(a) and (b) seemingly do nothing—in other words, if an officer may seize unlawfully, the legislature would not need to explicitly provide power for them to seize lawfully. We generally do not read statutory provisions so as to render them without effect. *See Houston Belt & Terminal Ry. v. City of Houston*, ___ S.W.3d ___, 2016 WL 1312910, at *6 (Tex. 2016)*. Looking to Chapter 59's definition of "seizure" casts further doubt upon the state's reading. A "seizure" is defined as a restraint of property under article 59.03(a) or (b). CODE CRIM. PROC. art. 59.01(8). And so, it would seem, a "seizure" under Chapter 59 includes *only* lawful seizures (i.e., seizures performed in accordance with article 59.03(a) or (b))—the inclusion of authority to lawfully seize implies the exclusion of authority to unlawfully seize. *See Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993). Herrera therefore appears to be at least partially correct: the state is not empowered by Chapter 59 to unlawfully seize property subject to forfeiture.

But what then? Even if the state is not statutorily empowered to unlawfully seize contraband, (and it is not), what is the *remedy* for failure to comply with article 59.03(b)? Herrera argued in his motion to suppress—and argues now—that the remedy is exclusion. Yet what is the source of this exclusionary remedy? As discussed above, it is not the Fourth Amendment. The constitutional rule applies only when its deterrence benefits outweigh its heavy social costs, and that is not the case here.[10] Nor does Chapter 59 provide for exclusion. To start, article 59.03(b) deals with seizure of the property to be forfeited; it does not concern itself with other evidence that might be used to prove property is subject to forfeiture. Thus, we reject Herrera's argument that *evidence* found during the seizure should be excluded under article 59.03(b). Moreover, while article 59.03 appears to limit officer conduct as to seizure of property subject to forfeiture, it does not provide a remedy—much less exclusion—for a violation of that apparent limitation. Articles 59.03(a) and (b) provide for how property subject to forfeiture may be seized. Article 59.03(c) requires the peace officer who seized the property to provide the attorney representing the state with a sworn statement including, among other things, "a list of the officer's reasons for the seizure." In the forfeiture proceeding, that attorney must then "attach to the notice [of seizure and intended forfeiture] the peace officer's sworn statement." *See* CODE CRIM. PROC. art. 59.04(b). Yet, despite providing fairly detailed notice requirements such as these, Chapter 59 never mentions excluding or suppressing property subject to forfeiture, even if such property is unlawfully seized (and, indeed, it would be anomalous to suppress the named party in a Chapter 59 proceeding). Nor does it require that the state

---

[10] An analysis of whether an exclusionary rule should apply in this context would likely look very similar to the analysis under the Fourth Amendment, discussed above. Even if we were to engage in such an analysis, therefore, the analysis would merely mirror that of whether the Fourth Amendment's exclusionary rule applies.

15

independently prove compliance with article 59.03. Instead, article 59.05(b) simply requires the state to prove by a preponderance of the evidence that the property is contraband (and thus subject to forfeiture), which includes a showing of "probable cause"—as we have previously defined that term in the civil-forfeiture context—pursuant to our state constitution. *See $90,235*, 390 S.W.3d at 293. In most cases, once the state meets that burden, "the judge shall forfeit the property to the state." CODE CRIM. PROC. art. 59.05(e). Nowhere in Chapter 59 is the forfeiture proceeding itself predicated on seizure; rather, it is predicated on whether the property is contraband. *See id.* art. 59.05(b).

Of course, the Code of Criminal Procedure does contain an exclusionary rule, but that rule only applies in criminal proceedings. *See id.* art. 38.23(a). Had the legislature intended for an exclusionary rule to apply in civil-forfeiture proceedings, it certainly knew how to effectuate that intent. But Chapter 59 says *nothing* about exclusion, and "[t]o supply omissions transcends the judicial function." *See Iselin v. United States*, 270 U.S. 245, 251 (1926); *see also* ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 93 (2012) ("The principle that a matter not covered is not covered is so obvious that it seems absurd to recite it."). We therefore imply neither rights nor corresponding remedies unless the statute clearly intends "to confer individual rights upon a class of beneficiaries"; indeed, "where the text and structure of a statute provide no indication that [the legislature] intends to create new individual rights, there is no basis for a [remedy]." *Cf. Gonzaga Univ. v. Doe*, 536 U.S. 273, 285–86 (2002). While article 59.03(b) appears to limit officer conduct, there is no indication that the legislature intended to import the drastic remedy of exclusion (for either evidence or the property subject to forfeiture) for an act

16

outside of such limitation.[11] Simply put, exclusion is "a matter not covered" in Chapter 59. There is no absurdity without it, and we will not read it in.

Accordingly, we hold that Chapter 59 neither provides for exclusion of illegally obtained evidence nor requires the state to prove lawful seizure as a prerequisite to commencing a forfeiture proceeding. In addition to complying with the procedural requirements of article 59.04, the state's only burden is proving by a preponderance of the evidence that the property is subject to forfeiture, which includes proving probable cause as we have defined that term in the civil-forfeiture context. *See $90,235*, 390 S.W.3d at 293.

**IV**

Lastly, in the interest of clarity, we note JUSTICE DEVINE's approach and explain why we choose a different path. Citing "the cardinal principle of judicial restraint—if it is not necessary to decide more, it is necessary not to decide more"—JUSTICE DEVINE would reverse solely on the legality of the search. *Post*, at ____ (citing *VanDevender v. Woods*, 222 S.W.3d 430, 433 (Tex. 2007)). We agree with JUSTICE DEVINE that judicial restraint counsels against deciding unnecessary issues. But neither our opinion nor JUSTICE DEVINE's decides issues "not necessary" to resolution—in resolving this case, one could decide *either* that the legality of the search does not preclude forfeiture *or* that the search was legal. Only in deciding both when one would be sufficient

---

[11] Indeed, articles 59.03(a) and (b) simply parrot the constitutional limitations on an officer's general authority to seize property. *See* CODE CRIM. PROC. art. 59.03(a)–(b); U.S. CONST. amend. IV; TEX. CONST. art. I, § 9. In this sense, these provisions are unremarkable—the legislature would certainly not grant peace officers authority beyond that allowed by the federal and state constitutions. Moreover, because the state *is* required to show "probable cause" to prove its case, it is certainly arguable that article 59.03 is partially effectuated through that requirement.

would we violate "the cardinal principle of judicial restraint." *See Woods*, 222 S.W.3d at 433. Neither opinion does so: we decide the former; he would decide the latter.

But why do we choose the former? To start, our path to resolution avoids the criminal-law question and analysis that is usually beyond our jurisdictional reach: "[u]nder our Constitution, this Court's appellate jurisdiction 'extend[s] to all cases except in criminal law matters.'" *See Heckman v. Williamson Cty.*, 369 S.W.3d 137, 146 (Tex. 2012) (quoting TEX. CONST. art. V, § 3(a)). Here, of course, we have jurisdiction to consider the legality of the search because it arises in a civil-forfeiture proceeding, which is undoubtedly civil. *See* CODE CRIM. PROC. art. 59.05(b) ("All cases under this chapter shall proceed to trial in the same manner as in other civil cases."). Yet the very fact that our jurisdiction does not ordinarily extend to criminal matters—where the "essence of the case" reveals "the issues it entails are more substantively criminal [than] civil"—should guide us to exercise caution in addressing such matters unnecessarily. *See Heckman*, 369 S.W.3d at 146. Here, resolving the constitutional-criminal-procedure question *is* unnecessary and would prevent us from answering important questions of civil law that can ultimately be decided only by this Court.[12] Accordingly, we choose to instead resolve the important questions surrounding the interpretation and application of Chapter 59 that were—until now—unresolved (or incorrectly resolved) by lower courts.

---

[12] Sometimes—as we have done in the civil-forfeiture context, *see $217,590.00*, 18 S.W.3d at 632 n.1, and as JUSTICE DEVINE does here—we assume a view of the law without endorsing it. In some cases, doing so is the prudent choice. *See, e.g.*, *id.* ("Because both parties in this case presume the exclusionary rule's application, we will assume without deciding that the rule applies."). In this case—where the parties have extensively briefed and argued over the exclusionary rule's application—assuming the rule's applicability serves only to avoid the question this case squarely presents.

Our resolution of those questions introduces tension with JUSTICE DEVINE's approach. Admittedly, he articulates a viable path to resolving this case, and we do not take issue with his constitutional-criminal-procedure analysis. However, that analysis presupposes exclusion *might* be required if a search were conducted illegally. We hold definitively that it is not. Under our holding, trial courts (and this Court) considering civil-forfeiture proceedings in the future will not need to conduct a Fourth Amendment reasonableness inquiry[13] because Chapter 59 contains neither an exclusionary rule nor a procedural prerequisite requiring the state to show a legal search. Accordingly, although JUSTICE DEVINE's approach may be a viable path to resolution of this case, it is a path that is ultimately inapposite in light of our holding.

\*   \*   \*

We have twice left open whether an exclusionary rule applies in civil-forfeiture proceedings, and today that question is again before us. We hold that neither the Fourth Amendment nor Chapter 59 provides for exclusion in Chapter 59 civil-forfeiture proceedings. Nor does Chapter 59 require that the state show lawful seizure as a procedural prerequisite to commencing a Chapter 59 proceeding. Because the court of appeals held otherwise, we reverse its judgment and remand this case to the trial court for further proceedings consistent with this opinion.

---

[13] This is a good thing. "Judicial restraint cautions that when a case may be decided on a non-constitutional ground, we should rest our decision on that ground and not wade into ancillary constitutional questions." *Woods*, 222 S.W.3d at 432. In this case, of course, either path to resolution requires us to address a constitutional question. That said, our path provides finality as to whether the Fourth Amendment exclusionary rule applies in civil-forfeiture proceedings, ostensibly curtailing future constitutional analyses by Texas courts; JUSTICE DEVINE's path does not.

19

                                                      _____

                                                      Jeffrey V. Brown
                                                      Justice

OPINION DELIVERED: June 10, 2016