Opinion issued November 19, 2020



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-19-00569-CV

————————————

**AETEZAZ AHMAD, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

On Appeal from the 149th District Court
Brazoria County, Texas
Trial Court Case No. 97304-CV

## O P I N I O N

### Background

In this civil forfeiture case, Brazoria County Narcotics Task Force officers seized $41,239 in cash, 103 complete gambling machines, and other items during the execution of a search warrant on Winner One Eleven Game Room in Alvin,

Texas. The State first charged Aetezaz Ahmad with gambling promotion, keeping a gambling place, and possession of a gambling device, equipment, or paraphernalia. *See* TEX. PENAL CODE §§ 47.03, 47.04, 47.06. These offenses are Class A misdemeanors. *See id*. The State began a civil forfeiture action under article 59.01(2)(B)(xi) of the Texas Code of Criminal Procedure and filed an amended notice of seizure and intended forfeiture. TEX. CODE CRIM. PROC. art. 59.01(2)(B)(xi); *see* TEX. PENAL CODE § 71.02(a)(2). In its pleadings, the State alleged that the seized property was contraband "used in the commission of organized criminal activity" as defined in "Chapter 71 of the Texas Penal Code" because Ahmad was charged with offenses "punishable as . . . Class A misdemeanor[s]." Later, the State reduced the gambling-promotion and keeping-a-gambling-place charges to two counts of gambling—a Class C misdemeanor. *See* TEX. PENAL CODE §§ 12.23, 47.02(a), (d). Ahmad pleaded guilty.

After Ahmad's conviction, the State moved for summary judgment in the 149th District Court of Brazoria County and attached an investigating officer's affidavit and documents filed in Ahmad's criminal proceeding at the time of his plea. Ahmad objected and moved to strike the State's summary-judgment evidence—Officer J. Edwards's affidavit—as hearsay. Ahmad's objections and motion were overruled by operation of law. The trial court granted the State's summary-judgment motion and ordered the seized money and property forfeited to the "Brazoria County

2

Narcotics Task Force . . . in accordance with article 59.06 of the Texas Code of Criminal Procedure."

On appeal, Ahmad raises four issues. First, Ahmad contends that the trial court lacked jurisdiction over the civil forfeiture action while the criminal prosecution was pending. Second, he contends that the trial court erroneously overruled his objections to the State's summary-judgment evidence. Third, he asserts that there was insufficient evidence to support summary judgment. Fourth, he asserts that the forfeiture order violated his constitutional rights against excessive fines and fees under Texas law and the Eighth Amendment of the United States Constitution.

## Subject Matter Jurisdiction

In his first issue, Ahmad argues that the trial court lacked subject matter jurisdiction to order the forfeiture under article 18.18 of the Texas Code of Criminal Procedure. Ahmad contends that the State failed to show, as required under article 18.18, that there was no prosecution or conviction following the seizure. We note, however, that Ahmad does not argue that the trial court lacked subject matter jurisdiction under Chapter 59, which was the basis of the forfeiture action here.

### A. Standard of review

"Subject-matter jurisdiction is essential to a court's power to decide a case." *City of Hous. v. Rhule*, 417 S.W.3d 440, 442 (Tex. 2013). Subject matter jurisdiction can be raised at any time. *Alfonso v. Skadden*, 251 S.W.3d 52, 55 (Tex. 2008) (per

curiam). Subject matter jurisdiction is a question of law, which we review de novo. *Meyers v. JDC/Firethorne, Ltd.*, 548 S.W.3d 477, 486 (Tex. 2018).

**B.     Applicable law**

The State must follow specific statutory procedures to legally seize property from someone. First, the State must "obtain a search warrant based on a sworn affidavit averring 'sufficient facts . . . to satisfy the issuing magistrate that probable cause does in fact exist for its issuance.'" *Hardy v. State*, 102 S.W.3d 123, 127 (Tex. 2003) (quoting TEX. CODE CRIM. PROC. art. 18.01(b)). After the magistrate issues a search warrant, the State executes the warrant by conducting a search and seizure of the property. *Id.* (citing TEX. CODE CRIM. PROC. arts. 18.06, 18.09). The magistrate must issue a written notice ordering the "person found in possession of the alleged gambling device or equipment,  . . . gambling paraphernalia, [or] gambling proceeds," to personally appear and "show cause why the property seized should not be destroyed or the proceeds forfeited." TEX. CODE CRIM. PROC. art 18.18(b). After the show cause hearing, the magistrate must determine the nature of gambling property or proceeds and the person's interest in that property. *Id.* art. 18.18(f). Unless the person proves by a preponderance of the evidence that the evidence is not gambling property or proceeds and that he or she is entitled to possession, the magistrate must "dispose of the property or proceeds." *Id.*

The State may file a civil forfeiture action under Chapter 59 or article 18.18(a) or (b) of the Texas Code of Criminal Procedure. *See* TEX. CODE CRIM. PROC. art. 59.10; *see Burnom v. State*, 55 S.W.3d 752, 754 (Tex. App.—Houston [14th Dist.] 2001, no pet.). Chapter 59 allows the forfeiture of property used in organized criminal activity and its proceeds. *Id.* art. 59.01(2)(B)(xi). Under Chapter 59, the State must initiate a civil forfeiture action within 30 days of the seizure and file a notice of the seizure and intended forfeiture "with the clerk of the district court in the county in which the seizure is made." TEX. CODE CRIM. PROC. art. 59.04(a)–(b).

Alternatively, property is also subject to forfeiture under article 18.18 when the seized property consists of gambling devices, gambling equipment, gambling paraphernalia, or gambling proceeds. *See* TEX. CODE CRIM. PROC. art. 18.18. Subsection (a) requires a "final conviction of a person for possession of a gambling device or equipment, altered gambling equipment, or gambling paraphernalia." *Id.* art. 18.18(a). Subsection (b), on the other hand, authorizes forfeiture when the person found in possession of the property has not been convicted or prosecuted following a seizure. *Id.* art. 18.18(b).

**C.    Analysis**

To show that the trial court lacked subject matter justification over the civil forfeiture action, Ahmad relies on *Craig v. State*, 707 S.W.2d 164 (Tex. App.— Houston [1st Dist.] 1986, no writ). In *Craig*, officers discovered gambling

equipment, money and checks during an inventory search of the appellant's vehicle during a traffic stop. *Id.* at 164. The police seized some of the items, and the State filed a civil forfeiture action under article 18.18. *Id.* The appellant was also indicted in Galveston County. *Id.* The trial court entered a judgment of forfeiture against the appellant. *Id.* On appeal, the appellant argued that the trial court lacked authority to order forfeiture under article 18.18. *Id.* at 164-65. A panel of this Court held that trial court lacked authority to enter a judgment of forfeiture under article 18.18 because the State failed to prove that there was no prosecution or conviction following seizure. *Id.* at 165–66. The undisputed evidence showed that there was a criminal proceeding pending at the time the trial court ordered forfeiture. *Id.*

Here, the State brought forfeiture proceedings against Ahmad under Chapter 59, not under article 18.18. *See* TEX. CODE CRIM. PROC. art. 59.10. Chapter 59 does not require the State to prove no prosecution or conviction following seizure. *See* TEX. CODE CRIM. PROC. art. 59.04. Thus, *Craig* is inapplicable to the civil forfeiture action in this case.

Rule 38.1(f) of the Texas Rules of Appellate Procedure requires an appellant's brief to "state concisely all issues or points presented for review." TEX. R. APP. 38.1(f). Ahmad acknowledges that the State may bring a civil forfeiture action under either Chapter 59 or article 18.18. *See* TEX. CODE PROC. art. 59.10. Yet, his summary-judgment briefing in the trial court and on appeal addresses only his

6

jurisdictional challenge under article 18.18, not under Chapter 59. *See* TEX. R. CIV. P. 166a(c); *see also* TEX. R. APP. 38.1(i) (appellate briefs "must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record"). References in an appellate brief to legal authority that have nothing to do with the issue to be decided do not meet the requirements of the Rules of Appellate Procedure. *See Republic Underwriters Ins. Co. v. Mex-Tex, Inc.*, 150 S.W.3d 423, 427 (Tex. 2004); *see also Amrhein v. Bollinger*, 593 S.W.3d 398, 402 (Tex. App.—Dallas 2019, pet. denied). Ahmad has therefore waived his challenge to the trial court's authority over the forfeiture proceedings by failing to brief it on appeal. *Kouba v. Northland Indus., Inc.*, 583 S.W.3d 857, 869 (Tex. App.—Houston [1st Dist.] 2019, pet. granted).

We overrule Ahmad's first issue.

### Evidentiary Challenge

In his second issue, Ahmad contends that the trial court erred by overruling his objections to the State's summary-judgment evidence based on "inadmissible hearsay and hearsay within hearsay." He argues that the affidavit of Officer Edwards "presents facts that are not based on Edwards's own personal knowledge." In response, the State asserts that Ahmad failed to preserve error for appeal. We agree.

7

## A.    Standard of review

We review a trial court's ruling on the admissibility of evidence for an abuse of discretion. *See Whirlpool Corp. v. Camacho*, 298 S.W.3d 631, 638 (Tex. 2009). A trial court abuses its discretion when it acts without reference to any guiding rules or principles. *In re Nat'l Lloyds Ins.*, 507 S.W.3d 219, 226 (Tex. 2016) (orig. proceeding) (per curiam). We will uphold a trial court's evidentiary ruling on any basis in the record. *Owens-Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998). "Moreover, we will not reverse a trial court for an erroneous evidentiary ruling unless the error probably caused the rendition of an improper judgment." *Id.* (citing TEX. R. APP. P. 44.1(a)(1)).

## B.    Analysis

To preserve error for appeal, the complaining party must make a timely request, objection, or motion, stating the specific grounds for the desired ruling if not apparent from the context. TEX. R. APP. P. 33.1(a)(1); *Guion v. Guion*, 597 S.W.3d 899, 904 n.3 (Tex. App.—Houston [1st Dist.] 2020, no pet.). The complaining party must invoke a procedure that apprises the trial court of the argument in a way that calls for the trial court to decide that issue. *Burbage v. Burbage*, 447 S.W.3d 249, 257 (Tex. 2014) ("[T]he objection must apprise the trial court of the error alleged such that the court has the opportunity to correct the problem."). Along with objecting to an error, the complaining party must also

8

secure a ruling on the objection to evidence. TEX. R. APP. P. 33.1(a)(2) (requiring either a trial court's ruling or a refusal to rule for preservation). Failure to do so waives the error on appeal. *Id.*

"Defects in the form of affidavits are not grounds for reversal unless specifically pointed out by objection by an opposing party with opportunity, but refusal, to amend." TEX. R. CIV. P. 166a(f). A challenge to an affiant's personal knowledge of allegations in an affidavit is a defect in form. *Grand Prairie Indep. Sch. Dist. v. Vaughan*, 792 S.W.2d 944, 945 (Tex. 1990) (per curiam); *see Giese v. NCNB Tex. Forney Banking Ctr.*, 881 S.W.2d 776, 782 (Tex. App.—Dallas 1994, no writ) ("Hearsay is an objection to form."). The failure to obtain a ruling on an objection to a defect in form waives the objection, and the objected-to summary-judgment evidence remains part of the summary judgment proof "unless an order sustaining the objection is reduced to writing, signed, and entered of record." *Giese*, 792 S.W.2d at 782.; *Seim v. Allstate Tex. Lloyds*, 551 S.W.3d 161, 164 (Tex. 2018) (per curiam) (internal quotation marks and citation omitted). Failure to secure the trial court's ruling on the objections to the summary-judgment evidence waives the complaint for appeal. *Vice v. Kasprzak*, 318 S.W.3d 1, 11 (Tex. App.—Houston [1st Dist.] 2009, pet. denied).

The record reflects that Ahmad objected and moved to strike the State's summary-judgment evidence on the grounds of inadmissible hearsay. The record

also reflects that he raised the same objections at the show cause hearing. But nothing in the record shows he obtained an adverse ruling or a refusal to rule followed by an objection to the refusal to rule to the written or in-court objections. Notably, Ahmad's brief omits any discussion of an adverse ruling or an objection to the court's refusal to rule from the trial court. We need not scour the records "for support of an appellant's assertion of error." *Thierry v. State*, 288 S.W.3d 80, 86 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd). Because Ahmad objected but failed to obtain a ruling on his objections—i.e., his hearsay objections to statements in Officer Edwards's affidavit—we conclude that Ahmad waived the complaint for appeal by failing to preserve the error. As a result, we overrule Ahmad's second issue.

## Civil Forfeiture

In his third issue, Ahmad contends that the trial court erroneously granted the State's motion for summary judgment. Specifically, he argues that the State failed to establish every element of its civil-forfeiture claim. Ahmad claims his property was illegally seized under an invalid search warrant, and, even if lawfully seized, the cash proceeds seized had no nexus to illegal gambling activity.

### A.    Standard of review

We review the trial court's summary judgment de novo. *See City of Richardson v. Oncor Elec. Delivery Co.*, 539 S.W.3d 252, 258 (Tex. 2018). To prevail on a motion for summary judgment, the movant has the burden to show that

10

no genuine issue of material fact exists and that the trial court should grant judgment as a matter of law. *Id*. at 258–59; TEX. R. CIV. P. 166a(c). Once the movant meets its burden, the burden shifts to the non-movant to raise a genuine issue of material fact precluding summary judgment. To meet this burden, the movant must establish every essential element of its claim or defense as a matter of law. *Holland v. Mem'l Hermann Health Sys.*, 570 S.W.3d 887, 896 (Tex. App.—Houston [1st Dist.] 2018, no pet.). Once the movant meets its burden, the burden shifts to the non-movant to raise a genuine issue of material fact. *KPMG Peat Marwick v. Harrison Cnty. Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex. 1999). We take the evidence favorable to the nonmovant as true. *Nixon v. Mr. Property Mgmt. Co., Inc.*, 690 S.W.2d 546, 548–49 (Tex. 1985). We indulge every reasonable inference in favor of the nonmovant and resolve any doubts in his favor. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007) (per curiam).

## B.     Applicable law

The summary judgment record shows that the State initiated civil forfeiture proceedings under Chapter 59 of the Code of Criminal Procedure. Under Texas law, Chapter 59 authorizes the State to pursue the forfeiture of property used in the commission of organized criminal activity and its proceeds. *See* TEX. CODE CRIM. PROC. art. 59.01(2)(B)(xi); TEX. PENAL CODE 71.02(a)(2). In the statutory scheme, property, including currency, is subject to seizure and forfeiture if it is contraband.

TEX. CODE CRIM. PROC. art. 59.02(a). Contraband is property used or intended to be used in the commission of gambling offenses punishable as a Class A misdemeanor, or proceeds derived from those gambling offenses. *Id*. art. 59.01(2)(B)(xi).

As applied to this case, contraband is property and proceeds that are derived from or intended for use in engaging in organized criminal activity based on the underlying offenses of gambling promotion, keeping a gambling place, or possession of a gambling device, equipment, or paraphernalia. *See id*. art. 59.01(2)(B)(xi); TEX. PENAL CODE §§ 47.03, 47.04, 47.06, 71.02(a)(2). A person commits the Class A misdemeanor offense of gambling promotion if he intentionally or knowingly operates or participates in the earnings of a gambling place. TEX. PENAL CODE § 47.03(a)(1). Similarly, a person commits the Class A misdemeanor offense of keeping a gambling place if he "knowingly uses or permits another to use as a gambling place any real estate, building, . . . or other property whatsoever owned by him or under his control, or rents or lets any such property with a view or expectation that it be so used." *Id*. § 47.04(a).

The purpose of forfeiting a defendant's contraband to the government is to prohibit the property and its proceeds to be used for illegal purposes. *See Bennis v. Michigan*, 516 U.S. 442, 452 (1996) ("Forfeiture of property prevents illegal uses . . . by imposing an economic penalty, thereby rendering illegal behavior unprofitable."); *Fant v. State*, 931 S.W.2d 299, 308 (Tex. Crim. App. 1996) (en

12

banc) (quoting *United States v. Ursery*, 518 U.S. 267, 290 (1996)) ("By requiring the forfeiture of property used, or gained, in the manner set out in the statute, . . . [t]here will also be some assurance 'they will not permit that property be used for illegal purposes.'"). Similarly, the Fifth Circuit has also observed that forfeiture of ill-gotten gains from criminal activity is "much like the confiscation of stolen money from a bank robber, [which] merely places that party in the lawfully protected financial status quo that he enjoyed prior to launching his illegal scheme. This is not punishment within the plain meaning of the word." *United States v. Tilley*, 18 F.3d 295, 300 (5th Cir. 1994) (internal citations omitted).

Under Chapter 59, the State must "prove by a preponderance of the evidence that the property at issue is contraband." *State v. One (1) 2004 Lincoln Navigator*, 494 S.W.3d 690, 698–99 (Tex. 2016). The State must also show that it had probable cause to seize the contraband by proving that a substantial connection exists between the contraband and the criminal offense. *Id.* at 698 n.9.

## C. Analysis

In his affidavit[1], Edwards asserted that he obtained a search warrant, signed by Judge Terri Holder of the 149th District Court for Brazoria County. The next day,

---

[1] Because there was no ruling on Ahmad's objections to the State's summary-evidence, we are constrained to accept Officer Edwards's affidavit at face value. *See Seim*, 551 S.W.3d at 166; *see also* TEX. R. EVID. 802 ("Inadmissible hearsay admitted without objection may not be denied probative value merely because it is hearsay.").

Edwards and other members of the Brazoria County Narcotics Task Force executed the search warrant at Winner One Eleven Game Room. The officers interviewed "six game room patrons." According to Edwards, Officer J. Miller interviewed B. Cruz, the game room attendant. Cruz told Officer Miller that she had worked for the game room for "about one year." Cruz was required to collect "operating money (bank) from the office safe." Officer Miller then asked Cruz if she had any "game room documents or money," and she took $1,230 in cash from her apron and handed it to him. Edwards's affidavit described the game room operations based on Cruz's interview with Officer Miller:

> Cruz described the "bank" as cash that she used to make matches and to pay out winning patrons. Cruz stated that a customer would enter the game room, . . . select a gambling machine, [and] say "match." Cruz would match whatever that patron put into the machine up to $20.00. Cruz stated that if a patron won, they would say "ticket." Cruz would confirm the win and pay the customer whatever the win was using her bank. Cruz logged the matches and wins into the attendant computer located at the attendant desk. Cruz stated that the minimum pay out [sic] was $20.00 and the maximum pay out was $3[,]000.00. At the end of her shift, Cruz would place any remaining operating cash in the office prior to leaving the game room.

Cruz declined to provide a written statement, told Officer Miller a man named "Tony" had hired her, and provided Officer Miller with Tony's telephone number. Edwards asserted that he called the number provided by Cruz. A man answered and identified himself as M. Dias. Dias confirmed that he was a "machine vendor" and

14

"repairman" for the game room. Dias named "Ahmad" as the owner of the game room and provided Edwards with Ahmad's number.

After leaving a message at the telephone number provided by Dias, Edwards received a call from a man who identified himself as Aetezaz Ahmad. Ahmad told Edwards that he was the leaseholder and owner of the game room. Ahmad also told Edwards that he had owned the game room since January 2017. Afterwards, Edwards told Ahmad that he would be getting misdemeanor arrest warrants for him.

Edwards's affidavit shows that at least three people—Cruz, Dias, and Ahmad—participated in the gambling promotion and keeping a gambling place activity. There is no dispute that gambling occurred in the game room. In fact, Ahmad judicially confessed to the underlying facts of the charged offenses when he pleaded guilty to gambling. *Brown v. State*, 507 S.W.2d 235, 238 (Tex. Crim. App. 1974); *see Johnson v. State*, No. 01-99-01269-CR, 2000 WL 964674, at *1 (Tex. App.—Houston [1st Dist.] July 13, 2000, no pet.) (mem. op., not designated for publication) ("By pleading guilty, appellant admitted the offense."). Thus, Edwards' affidavit establishes that the property seized, including the $1,230 of cash from Cruz, was contraband subject to forfeiture. *See, e.g.*, *Lot 6, NW 17' of 5, Block 5 v. State*, No. 13-07-00326-CV, 2009 WL 1801466, at *4 (Tex. App.—Corpus Christi June 25, 2009, no pet.) (mem. op.) (the state had established that a house was being used for the unlawful delivery of controlled substances, and was thus contraband subject

to forfeiture because the homeowner pleaded guilty to engaging in the storage and sale of controlled substances).

The evidence also supports the trial court's probable-cause finding of a substantial connection between the property and proceeds seized and the gambling-related offenses. First, Ahmad told Edwards that he owned the game room, per Edwards's affidavit. Second, Ahmad admitted to every element of gambling in his guilty plea. Third, Cruz gave Officer Miller "game room money," which she admitted was from the gambling operations. *Cassias v. State*, 719 S.W.2d 585, 587 (Tex. Crim. App. 1986) (en banc) (citing *Brinegar v. United States*, 338 U.S. 160, 175–76 (1949)) ("Where facts and circumstances within the knowledge of a police officer, arising from a reasonably trustworthy source, would warrant a man of reasonable caution in the belief that items of contraband or evidence of a crime may presently be found in a specified place, there is probable cause to issue a warrant to search that place"). Finally, the officers recovered $41,239[2], 103 gambling machines, and other items during their search of the game room. Based on the summary-judgment evidence, the State met its burden and established every essential element of its claims.

---

[2]  The currency seized by the officers totaling $41,239, includes Cruz's attendant apron: $1,230.00, illicit gambling machines: $14,615, small sentry safe: $9,699.00, upper wall safe: $5,000, lower wall safe: $10,655.

Ahmad, however, did not carry his burden of raising a genuine issue of material fact precluding summary judgment. In his response to the State's motion, Ahmad attached no evidence to show why the seized property should not be forfeited. Instead, he merely alleged that "[t]here is not sufficient evidence to show that any or all of the currency and machines seized are contraband used in the commission of a felony." This "conclusory statement" is "insufficient to create a question of fact to defeat summary judgment." *Elizondo v. Krist*, 415 S.W.3d 259, 264 (Tex. 2013); *see City of San Antonio v. Pollock*, 284 S.W.3d 809, 816 (Tex. 2009) (holding conclusory, baseless testimony to be no evidence). We therefore conclude that the trial court did not err by ordering the forfeiture of the contraband at issue. The State established that the property was contraband and showed that there was probable cause to seize the contraband. The State demonstrated a substantial connection between the contraband to be forfeited and the gambling-related offenses. We overrule Ahmad's third issue.

### Excessive Fines Clause

In his final issue, Ahmad argues that the trial court violated the Eighth Amendment of the United States Constitution prohibiting excessive fines when it entered a judgment of forfeiture of $41,239 in cash, 103 gambling machines, and

other property seized as contraband. He argues that full forfeiture of his property was excessive and grossly disproportionate to the gravity of his offenses.[3]

## D.  Applicable law

Under the Eighth Amendment, "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. CONST. amend. VIII. The Excessive Fines Clause applies to the states through the Fourteenth Amendment. *Robinson v. California*, 370 U.S. 660, 675 (1962). The United States Supreme Court addressed the application of the Eighth Amendment to forfeiture of property that was not contraband under federal forfeiture statutes in *Austin v. United States*, 509 U.S. 602 (1993). *See also Fant*, 931 S.W.2d at 302 (Tex. Crim. App. 1996) (en banc) (applying *Austin*). The court held that civil forfeiture serves as a "punishment" "subject to the limitations" of the Excessive Fines Clause of the Eighth Amendment. *Austin*, 509 U.S. at 622.

---

[3]     Ahmad also argues that forfeiture is unlawful under article 18.18 because the property was not contraband because he was not prosecuted or convicted of felony offenses delineated in Subsection (a) or (b) of that statute. Texas law is clear that the defendant must be convicted of one of the enumerated offenses of article 18.18(a) as a predicate to generate the State's remedy of forfeiture. *State v. Dugar*, 553 S.W.2d 102, 103 (Tex. 1977). However, as noted previously, the State sought forfeiture under Chapter 59, not article 18.18. Under Texas Code of Criminal Procedure article 59.01(B)(xi), a felony is not a predicate to bring a forfeiture action against a defendant. TEX. CODE CRIM. PROC. art. 59.01(B)(xi) (defining "contraband" as "any offense under Chapter 71, Penal Code"). We need not address this issue because the forfeiture was not under article 18.18. *See Republic Underwriters Ins. Co.*, 150 S.W.3d at 427.

Once the State establishes that the property "constitutes punishment and is thus a "fine" within the meaning of the Excessive Fines Clause," a court must then apply a "proportionality" test under *United States v. Bajakajian*, 524 U.S. 321, 334 (1998). *Bajakajian* involved a forfeiture of currency under a federal statute making it unlawful to carry more than $10,000 in currency out of the country without reporting it. *Id*. The respondent pleaded guilty to the criminal violation of failure to report. *Id*. at 325. The government also sought forfeiture of the entire amount of cash, $357,144, carried by respondent. *Id*. The district court ruled that, under the statute, the entire sum was subject to forfeiture, but declined to enter such a judgment, holding that such a result would violate the Excessive Fines Clause. *Id*. at 326–27. The Ninth Circuit affirmed. *Id*. The Supreme Court, reversing, held that: (1) forfeitures are "fines" subject to the limitations of the Eighth Amendment if they constitute punishment for an offense; (2) forfeiture of currency under the subject statute is a form of punishment; it is a sanction available when imposing a sentence for violation of the criminal statute imposed after criminal proceedings and cannot be imposed on an "innocent owner"; and (3) modern statutory forfeiture provisions are "fines" for Eighth Amendment purposes, if they constitute, even in part, punishment. *Id*. at 333–34. Thus, the forfeiture of currency was subject to the Excessive Fines Clause. *Id*. at 334.

19

**E.      Analysis**

Here, the property at issue is not a fine as contemplated by the Eighth Amendment. As Justice Scalia noted in his concurring opinion in *Austin*, "to constitute a fine under the Eighth Amendment, [ ] the forfeiture must constitute 'punishment.'" *Austin*, 509 U.S. at 623 (Scalia, J., concurring). Justice Scalia distinguished a fine subject to the limitations of the Excessive Fines Clause from an instrumentality of the offense:

> Unlike monetary fines, statutory *in rem* forfeitures have traditionally been fixed, not by determining the appropriate value of the penalty in relation to the committed offense, but by determining what property has been "tainted" by unlawful use, to which issue the value of the property is irrelevant. Scales used to measure out unlawful drug sales, for example, are confiscable whether made of the purest gold or the basest metal. But an *in rem* forfeiture goes beyond the traditional limits that the Eighth Amendment permits if it applies to property that cannot properly be regarded as an instrumentality of the offense—the building, for example, in which an isolated drug sale happens to occur. Such a confiscation would be an excessive fine. The question is not *how much* the confiscated property is worth, but *whether* the confiscated property has a close enough relationship to the offense.

*Id*. at 627–28. *Austin* requires us to determine whether the property and proceeds—subject to statutory forfeiture under Texas law—constitute a fine or an instrumentality of the offense.

The record evidence reflects that police officers seized the currency, the gambling machines, and the other physical property as instrumentalities of the gambling offenses because these items were used for illegal purposes. Indeed, the

20

State attached the three affidavits as summary-judgment evidence stating, "[A]ll listed seized items are proceeds from and/or instruments used in and to further the illicit gambling operation that is the Winner One Eleven game room." In response to the State's motion for summary judgment, Ahmad alleged that there was insufficient evidence to show that "any or all of the currency and machines seized" were instruments of the illicit gambling activity. He also alleged that "[p]roceeds would only be the currency paid by customers, and not any starting capital or 'bank.'"

To qualify as instrumentalities, the forfeited property and the gambling offenses must be related. *Austin*, 509 U.S. at 623. Here, the gambling machines, proceeds, and other property were "tainted" by the illegal gambling offense. *See id*. Ahmad did not show what portion, if any, of the seized funds was starting capital versus currency paid by customers. He did not attach any evidence in support of his allegations. Nor did he cite any legal authorities to explain why any portion of the currency or other items were not instrumentalities of the crimes.

Because the currency and property seized from Ahmad was seized as an instrumentality of the gambling offenses, and not as a fine intended to punish him, we need not reach the issue of proportionality. We therefore conclude that the trial court did not violate the Eighth Amendment by entering a judgment of forfeiture of Ahmad's property. We overrule Ahmad's fourth issue.

## Conclusion

We affirm the trial court's judgment.

Sarah Beth Landau
Justice

Panel consists of Justices Keyes, Kelly, and Landau.