**Affirmed and Memorandum Opinion filed July 16, 2019.**



In The

# Fourteenth Court of Appeals

## NO. 14-19-00062-CV

## IN THE INTEREST OF L.C.L. AND M.E.M., CHILDREN

**On Appeal from the 315th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2016-03785J**

## MEMORANDUM OPINION

Appellant F.L. ("Mother") appeals the trial court's final decree terminating her parental rights with respect to her children L.C.L. ("Lorenzo") and M.E.M. ("Melissa").[1] The trial court terminated Mother's parental rights on predicate grounds of endangerment and failure to comply with the service plan for reunification. *See generally* Tex. Fam. Code Ann. § 161.001(b)(1)(D), (E), and (O). The trial court further found that termination of Mother's rights was in the children's

---

[1] Lorenzo and Melissa are pseudonyms. Pursuant to Texas Rule of Appellate Procedure 9.8, we use fictitious names to identify the minors and other family members involved in this case. *See* Tex. R. App. P. 9.8.

best interest. *See* Tex. Fam. Code Ann. § 161.001(b)(2). In six issues, Mother contends (1) the trial court erred in failing to file findings of fact and conclusions of law; (2) the trial court violated Mother's equal protection rights under the Texas and United States constitutions; (3) the trial court erred in admitting evidence in violation of the Texas and United States constitutions; and (4) the evidence is legally and factually insufficient to support the trial court's findings of endangerment, failure to follow a family service plan, and that termination is in the best interest of the children. We affirm.

BACKGROUND

## I. Pretrial Proceedings

### A. Pretrial Removal Affidavit

On March 22, 2016, the Department received a referral alleging neglectful supervision of Lorenzo, Melissa, and their older sister A.M. ("Andrea"). The report stated that all three children were found home alone. Electricity to the home had been inoperable for three days. None of the children knew where Mother was. The referral noted that Mother "sleeps all day" and had been absent from the home overnight at least twice. The report further noted that "there is food all over the floor and by the front door." The children were described as "very skinny." At the time of the removal Andrea was fifteen years old, Lorenzo was five, and Melissa was four.

Over the course of a three-month investigation Mother and the children moved. When the investigator located the family, Mother reported that she was from Honduras and had lived in the United States for five years. Mother had five children, the three who lived with her, and two others who lived in Honduras. Mother submitted to a drug screening at the Department's request. Urine analysis was negative for all substances. A hair follicle analysis was positive for cocaine.

The investigator met Mother at her home and explained that due to the positive drug test Mother would need to place the children outside the home. The investigator provided Mother with a child caregiver resource form to be filled out with names of potential caregivers. Mother never completed the form for possible placement options.

**B.  Department History**

One year earlier, on January 17, 2015, the Department received a referral that the three children had been left home unsupervised while Mother was at work. The family was living in a trailer with a front door that could not be secured. The trailer had no running water. The case was closed with a disposition of "ruled out."

Four months after the first referral, on April 24, 2015, the Department received a referral in which Andrea stated that she did not want to return home to Mother. It was reported that Mother was abusive toward the children and had withdrawn Lorenzo from school because "they have threatened to take her to truancy court." It was also reported that Mother had threatened to take the younger children to Honduras to live with Melissa's father, who was described as a "known drug addict." It was also reported that Mother frequented clubs and may have been working as a prostitute. A concern was noted about domestic violence "with the mother's husband who lives in McAllen."

**C.  Criminal History**

Five years before the referral in the current case, in 2011, Mother was convicted of misdemeanor driving while intoxicated and received nine months' probation.

The Department requested emergency custody due to Mother's positive drug test and leaving the children alone.

3

**D.    Family Service Plan**

The Department was named temporary managing conservator and a family service plan was put in place with the goal of returning the children to Mother. The trial court incorporated the plan into an order of the court and required Mother to:

- Complete a psychosocial assessment conducted by the Children's Crisis Care Center and follow all recommendations made by the evaluator;

- Provide her caseworker with a signed release of confidential information;

- Attend, actively participate in, and successfully complete six- to eight-week parenting classes with Parenting Partnership;

- Participate in domestic violence classes through Aid to Victims of Domestic Abuse and present certificate of completion to the caseworker no later than 30 days from the last class;

- Demonstrate an understanding of the adverse effects of substance abuse on herself and her children;

- After referral by the caseworker for substance abuse services, Mother is responsible for completing a substance-abuse assessment and completing all recommendations;

- Complete random urine drug tests throughout the duration of the case;

- Maintain suitable housing that is clean, stable, and free from safety hazards for a period of six consecutive months;

- Address and work on a realistic education and/or job skill plan, budget and future plans to care and protect her children;

- Actively participate in all permanency conferences, court hearings, family visits and activities that are centered for her children;

- Visit her children at the Department office twice per month; and

- Abstain from engaging in criminal conduct.

### E. Abandonment of Termination Petition for Andrea

While the case was pending the trial court signed a partial nonsuit reflecting the Department's abandonment of its termination grounds as to Andrea. Testimony at trial reflected that Andrea was the respondent in a parental termination case for her own child. Trial proceeded on Mother's rights to Melissa and Lorenzo.

## II. Trial

Victoria Palmer, the caseworker, testified that the children were placed in foster care that was meeting their physical and emotional needs. The foster family was willing to adopt the children.

Palmer testified that of the services Mother was required to complete she completed a substance abuse assessment, a psychosocial evaluation, and parenting classes. Mother was "very infrequent" with drug testing and failed to submit to several tests. Mother did not maintain stable housing or stable employment. Mother did not attend domestic violence classes or complete the recommendations from her psychosocial evaluation. The recommendations from the psychosocial evaluation included individual therapy. The recommendations from the substance-abuse assessment included individual and group substance-abuse counseling. Despite the Department's efforts to arrange service providers, Mother did not attend individual therapy or substance-abuse counseling.

Mother's drug screening results were admitted into evidence without objection. Those results showed positive results for cocaine in the hair follicle on May 26, 2016, October 21, 2016, November 4, 2016, November 2, 2017, November 8, 2017, and February 9, 2018. Due to Mother's continued positive drug test results Mother was unable to provide the children with a safe and stable environment. Therefore, the Department stopped permitting visits with the children in May 2018.

Palmer testified that Mother's drug use and failure to provide a safe environment endangered the children's physical health and safety.

In testifying to Mother's positive drug tests Palmer noted that the amounts registered in Mother's hair fluctuated. The tests did not show a decline in use over the two-year period the case was pending. To Palmer's knowledge, Mother had not attended substance-abuse treatment. Palmer spoke with Mother about the importance of completing the family service plan. Palmer attempted to visit Mother at the address Mother provided but Mother was never available when Palmer visited.

At the time the children were removed Lorenzo was six years old but was not enrolled in school. As a result, Lorenzo had to repeat first grade twice. Palmer testified that at the time of trial both children were in a home that met all of their needs and both children had expressed desires to stay in the foster home and to be adopted by the foster parents.

Mother expressed to her attorney that she did not want to testify. Mother rested after the Department's last witness. However, counsel for Melissa's alleged father called Mother to testify.

On cross-examination Mother testified that she had not used cocaine for five to six months before trial. Despite claiming she had not used cocaine since May 2018, Mother admitted that she did not appear for requested drug tests in June, July, August, or September of 2018, the four months immediately before trial. Mother was aware that a refusal to appear for a drug test would be considered a positive result. Mother had tested positive for cocaine at the May 2018 test. Despite positive drug tests in March and April 2018 Mother denied using cocaine. Mother admitted using cocaine once per month, sometimes once every two months.

As excuses for not completing the services in the family service plan Mother

6

testified that she did not fully understand the services that were required. Mother said she sought clarification from the caseworker, but the caseworker did not respond to her messages. Mother further did not understand when she appeared at court hearings what services she was being asked to complete. Mother did not visit her children due to transportation and work issues.

Mother testified that she had been living in the same apartment for approximately ten months. Mother was working for a shipping company making about $2,000 per month. Mother was attending school to obtain her General Equivalency Diploma. Mother denied that the home from which the children were removed lacked electricity.

Mother testified that her relationship with her caseworker was "bad" because she and the caseworker did not speak the same language. Mother used her mobile phone to translate the caseworker's messages. Mother testified that when she asked to see her children the caseworker did not answer her messages. Mother testified that she asked for a caseworker who spoke her language. A copy of a text message conversation between Palmer and Mother was admitted into evidence. Mother testified the following messages were exchanged in May 2018, approximately five months before trial began:

Caseworker: At this we are not setting up visitation.

Mother: Why. You gave them to adoption or what?

Caseworker: No they haven't been adopted.

Mother: Then? You know I haven't seen them.

Caseworker: We aren't doing visitation because you haven't done enough on your service plan, you haven't gone to drug test when we request you, and the goal is unrelated adoption.

Mother: Every time you send me to do my test I go so I don't know what you talking about. I'm done with my service plan.

Mother: I need to see my children you have to teach them it is a long time without seeing them. You are a bad person because you have not shown me since January.

In the middle of Mother's testimony trial was recessed for one month. When trial resumed Mother testified that she had begun attending classes to address substance abuse. Mother testified that she regretted not taking the case seriously from the beginning.

The trial court terminated Mother's parental rights on the predicate grounds of endangerment and failure to follow a service plan. *See* Tex. Fam. Code Ann. § 161.001(b)(1)(D), (E), and (O).

### STANDARDS OF REVIEW

The involuntary termination of parental rights implicates fundamental constitutional rights. *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985); *In re D.R.A.*, 374 S.W.3d 528, 531 (Tex. App.—Houston [14th Dist.] 2012, no pet.). Because of the severity and permanency of terminating the parental relationship, Texas requires clear and convincing evidence to support such an order. *See generally* Tex. Fam. Code Ann. § 161.001; *In re J.F.C.*, 96 S.W.3d 256, 265–66 (Tex. 2002).

Mother challenges on appeal the legal and factual sufficiency of the evidence supporting the trial court's order terminating Mother's parental rights pursuant to Texas Family Code section 161.001(b). Section 161.001(b) permits the termination of a parent-child relationship if the trial court finds by clear and convincing evidence that (1) one or more predicate acts enumerated in section 161.001(b)(1) was committed, and (2) termination is in the best interest of the child. "Clear and convincing evidence" means "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Tex. Fam. Code Ann. § 101.007; *In re J.F.C.*, 96 S.W.3d

8

at 264.

Reviewing Mother's legal sufficiency challenge under the clear-and-convincing evidentiary standard, we "should look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009). We assume that the fact finder resolved disputed facts in favor of its finding if a reasonable fact finder could do so, and we disregard all evidence that a reasonable fact finder could have disbelieved. *In re G.M.G.*, 444 S.W.3d 46, 52 (Tex. App.—Houston [14th Dist.] 2014, no pet.).

In reviewing termination findings for factual sufficiency of the evidence, we consider and weigh all the evidence, including disputed or conflicting evidence. *In re J.O.A.*, 283 S.W.3d at 345. "If, in light of the entire record, the disputed evidence that a reasonable fact finder could not have credited in favor of the finding is so significant that a fact finder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id*. We give due deference to the fact finder's findings and we do not substitute our judgment for that of the fact finder. *In re H.R.M.*, 209 S.W.3d. 105, 108 (Tex. 2006) (per curiam).

## ANALYSIS

Mother raises three issues that, if sustained, would result in rendition of judgment. Mother's second, third, and fifth issues read as follows:

> II.    Appellant's 14th amendment and 5th amendment due process right to her fundamental liberty interest in the care, custody, and control of her children pursuant to *Troxel v. Granville*, 530 U.S. 57 (2000) and Art. 1 section 19 of the Texas constitution were violated when the District Court ordered the Termination of her parental rights without subjecting the State to prove its case by a "clear and convincing evidence" standard.
>
> III.    The Trial Court committed fundamental error by not following

9

the requirement established by Texas Family Code, § 161.001(b) that allows for termination of the parent-child relationship upon a "clear and convincing evidence" standard which places the burden of proof in the Texas Department of Family and Protective Services.

V.    The Trial Court committed fundamental error when it terminated Appellant's "parental rights" pursuant to Texas Family Code, § 161.001(b)(1),(D),(E),(O) without legally and factually sufficient evidence as required by *In re G. M.*, 596 S. W. 2d 846 (Tex. 1980) and *In the Interest of J.F.C.*, 96 S.W.3d 256, 264 (Tex. 2002).

We construe issues two, three, and five as challenges to the legal and factual sufficiency of the evidence to support the trial court's findings on the predicate grounds for termination and the trial court's finding that termination is in the best interest of the children. If disposition of an issue would result in a rendition of judgment, we consider that issue before addressing any issues that would result only in remand for a new trial. *Natural Gas Pipeline Co. of Am. v. Pool*, 124 S.W.3d 188, 201 (Tex. 2003); *In re S.R.*, 452 S.W.3d 351, 359 (Tex. App.—Houston [14th Dist.] 2014, pet. denied).

## I.    Predicate Termination Findings

The trial court made predicate termination findings pursuant to Texas Family Code section 161.001(b)(1)(D), (E), and (O). Under section 161.001(b)(1), parental rights may be terminated if the fact finder finds by clear and convincing evidence that the parent has (*inter alia)*:

(D) knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child;

(E) engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child;

. . . [or]

(O) failed to comply with the provisions of a court order that

10

specifically established the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child's removal from the parent under Chapter 262 for abuse or neglect of the child[.]

Tex. Fam. Code Ann. § 161.001(b)(1)(D), (E), & (O).

Courts have long recognized that due process "guarantees more than fair process" and "provides heightened protection against government interference with certain fundamental rights and liberty interests." *Troxel v. Granville*, 530 U.S. 57, 65 (2000). One of the most fundamental liberty interests recognized is the interest of parents in the care, custody, and control of their children. *See id*. 530 U.S. at 65–66 ("[T]he custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder.").

In parental termination cases, due process mandates a clear and convincing evidence standard of proof. *See In re A.B.*, 437 S.W.3d 498, 502 (Tex. 2014). "Due process compels this heightened standard because terminating the parent-child relationship imposes permanent, irrevocable consequences." *In re J.A.J.*, 243 S.W.3d 611, 616 (Tex. 2007).

Only one predicate finding under section 161.001(b)(1) is necessary to support a judgment of termination when there also is a finding that termination is in the children's best interest. *See In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). Due process requires, however, that when a parent has raised the issue of insufficiency of the evidence to support the trial court's findings under section 161.001(b)(1)(D) or (E) of the Family Code, an appellate court must address at least one of those endangerment findings to ensure a meaningful appeal. *In re N.G.*, — S.W.3d — No. 18-0508, 2019 WL 2147263, at *3 (Tex. May 17, 2019). Due process and due course

11

of law requirements also mandate that an appellate court detail its analysis for an appeal of parental termination rights under section 161.001(b)(1)(D) or (E) of the Family Code. *Id.* at *4. Following the supreme court's mandate, we address the trial court's endangerment finding under subsection 161.001(b)(1)(E).

Under subsection (E), the relevant inquiry is whether evidence exists that the endangerment of the child's physical and emotional well-being was the direct result of the parent's conduct, including acts, omissions, or failure to act. *In re J.T.G.*, 121 S.W.3d 117, 125 (Tex. App.—Fort Worth 2003, no pet.); *see also In re S.M.L.*, 171 S.W.3d 472, 477 (Tex. App.—Houston [14th Dist.] 2005, no pet.). Children are endangered when the environment creates a potential for danger of which the parent is aware but disregards. *In re S.M.L.*, 171 S.W.3d at 477. Termination under subsection (E) must be based on more than a single act or omission — the evidence must demonstrate a voluntary, deliberate, and conscious course of conduct by the parent. *In re C.A.B.*, 289 S.W.3d 874, 883 (Tex. App.—Houston [14th Dist.] 2009, no pet.).

While endangerment under subsection (E) often involves physical endangerment, the statute does not require that the conduct be directed at a child or that the child actually suffer physical injury; rather, the specific danger to the child's well-being may be inferred from the parent's misconduct alone. *See In re S.R.*, 452 S.W.3d at 360; *see also Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987) ("'[E]ndanger' means to expose to loss or injury; to jeopardize"). As a general rule, subjecting a child to a life of uncertainty and instability endangers the child's physical and emotional well-being. *In re J.O.A.*, 283 S.W.3d at 345. This satisfies this subsection's requirement of endangering the emotional well-being of the child.

A parent's decision to engage in illegal drug use during the pendency of a

termination suit may support a finding that the parent engaged in conduct that endangered the child's physical or emotional well-being. *See In re A.H.A.*, No. 14-12-00022-CV, 2012 WL 1474414, at *7 (Tex. App.—Houston [14th Dist.] Apr. 26, 2012, no pet.) (mem. op.). "Additionally, a fact finder reasonably can infer that a parent's failure to submit to court-ordered drug tests indicates the parent is avoiding testing because they were using illegal drugs." *In re E.R.W.*, 528 S.W.3d 251, 265 (Tex. App.—Houston [14th Dist.] 2017, no pet.). Here, Mother asserts that the evidence does not support the finding that she endangered Lorenzo and Melissa. We disagree.

The record establishes a voluntary, deliberate, and conscious course of conduct by Mother that endangered the children's emotional and physical well-being. *See In re C.A.B.*, 289 S.W.3d at 883; *In re S.M.L.*, 171 S.W.3d at 477. Over the course of two years Mother tested positive for cocaine six times and failed to attend at least four additional drug screenings scheduled during the pendency of the underlying action, allowing the presumption that Mother continued to use illegal drugs. *See In re E.R.W.*, 528 S.W.3d at 265. Continued illegal drug use after children's removal is conduct that jeopardizes parental rights and may be considered as establishing an endangering course of conduct. *In re A.A.Z.*, No. 14-17-00276-CV, 2017 WL 3612259, at *9 (Tex. App.—Houston [14th Dist.] Aug. 22, 2017, pet. denied) (mem. op.).

Mother argues in her appellate brief that evidence showing that she continued to use drugs while this case was pending is unreliable because "the record is devoid of any expert testimony about how these tests are conducted." Mother cites no authority requiring expert testimony to allow a fact finder to infer cocaine use based on positive hair follicle drug test results, such as Mother's, in parental termination cases. This court has considered this argument before and rejected it. *See In re*

*Z.N.M.*, No. 14-17-00650-CV, 2018 WL 358480, at *6 (Tex. App.—Houston [14th Dist.] Jan. 11, 2018, no pet.) (mem. op.) (rejecting the argument that an expert was necessary to interpret drug testing results); *In re C.M.-L.G.*, No. 14-16-00921-CV, 2017 WL 1719133, at *10 (Tex. App.—Houston [14th Dist.] May 2, 2017, pet. denied) (mem. op.) (same).

Each of the drug tests was admitted into evidence and the caseworker testified that the tests showed continual use of cocaine. A reasonable fact finder could find that an individual repeatedly testing positive for a controlled substance during a two-year period did so because that individual continued using drugs during those two years. Accordingly, we conclude the trial court reasonably could have relied on the drug test results in terminating Mother's parental rights under section 161.001(b)(1)(E) without accompanying expert witness testimony.

Mother further argues that she was impeded in her attempts to comply with the family service plan because she did not receive a copy of the plan written in Spanish and the caseworker would not communicate with her in Spanish or locate a translator. We disagree that inability to comply with an agency's family service plan renders termination impossible. While it is true that in many cases failure to comply with a family service plan is cited as evidence favoring termination, the converse is not always true. *See In re J.I.T.P.*, 99 S.W.3d 841, 848 (Tex. App.—Houston [14th Dist.] 2003, no pet.) (affirming termination despite belated parental attempts to better their parenting abilities). "There are limits to what government programs can do. The elements of a safe, stable, and happy childhood cannot all be reduced to a checklist in a service plan." *In re M.G.D.*, 108 S.W.3d 508, 514 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). A reasonable fact finder could have credited Mother's obstacles to completion of the service plan and still found sufficient evidence of endangerment to terminate Mother's parental rights.

14

When viewed in the light most favorable to the trial court's finding, the evidence is legally sufficient to support the trial court's determination that termination of Mother's parental rights was justified under section 161.001(b)(1)(E) of the Family Code. *See In re J.O.A.*, 283 S.W.3d at 344. Further, in view of the entire record, we conclude the disputed evidence is not so significant as to prevent the trial court from forming a firm belief or conviction that termination was warranted under section 161.001(b)(1)(E). *See id*. at 345. The evidence therefore was factually sufficient to support the trial court's section 161.001(b)(1)(E) finding. *See id*.

Because we conclude the evidence is legally and factually sufficient to support the trial court's finding pursuant to Family Code section 161.001(b)(1)(E), we need not address Mother's issues challenging the other bases for termination of her parental rights under section 161.001(b)(1)(D) and (O). *See In re A.V.*, 113 S.W.3d at 362 ("Only one predicate finding under section [161.001(b)(1)] is necessary to support a judgment of termination when there is also a finding that termination is in the child's best interest."). We overrule Mother's issue challenging the trial court's finding of endangerment under subsection (E) and do not address Mother's issues challenging endangerment under subsection (D) or her failure to comply with the family service plan under subsection (O).

## II.     Best Interest of the Children

Mother also challenges the legal and factual sufficiency of the evidence to support the trial court's finding that termination of her parental rights is in the children's best interest.

The fact finder may consider the following factors to determine the best interest of the children:  (1) the desires of the children; (2) the present and future physical and emotional needs of the children; (3) the present and future emotional

15

and physical danger to the children; (4) the parental abilities of the persons seeking custody; (5) the programs available to assist those persons seeking custody in promoting the best interest of the children; (6) the plans for the children by the individuals or agency seeking custody; (7) the stability of the home or proposed placement; (8) acts or omissions of the parent that may indicate the existing parent-child relationship is not appropriate; and (9) any excuse for the parent's acts or omissions. *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976); *see also* Tex. Fam. Code Ann. § 263.307(b) (Supp.) (listing factors to consider in evaluating parents' willingness and ability to provide the children with a safe environment); *In re E.R.W.*, 528 S.W.3d at 266.

Courts apply a strong presumption that the best interest of the children is served by keeping the children with their natural parents and the burden is on the Department to rebut that presumption. *In re D.R.A.*, 374 S.W.3d at 531. Prompt and permanent placement in a safe environment is also presumed to be in the children's best interest. Tex. Fam. Code Ann. § 263.307(a).

Multiple factors support the trial court's finding that termination of Mother's parental rights is in the children's best interest.

## A. Desires of the Children

The children were eight and six years old at the time of trial. Palmer testified that both children were in the same foster home and the foster parents were meeting all of the children's physical and emotional needs. The foster parents were willing to adopt both children. According to Palmer both children wanted to stay in the foster home and had expressed desires to be adopted by their foster parents.

This factor supports the trial court's finding that termination of Mother's rights is in the children's best interest.

16

**B.      Present and Future Physical and Emotional Needs of the Children**

Our analysis of the present and future physical and emotional needs of the children focuses on the children's innate need for permanence. *See In re D.R.A.*, 374 S.W.3d at 533. The goal of establishing a stable, permanent home for children is a compelling government interest. *See id*.

The record reflects that at the time of removal the children were not in a safe stable home. A pattern of illegal drug use by the parent suggests that the parent is "not willing and able to provide the child with a safe environment—a primary consideration in determining the child's best interest." *In re A.C.*, 394 S.W.3d 633, 642 (Tex. App.—Houston [1st Dist.] 2012, no pet.); *see In re E.R.W.*, 528 S.W.3d at 266 ("A parent's drug use supports a finding that termination is in the best interest of the child."). Mother's history of drug use and her unwillingness to seek treatment for her use is relevant to physical danger to the children. *See Holley*, 544 S.W.2d at 372 (listing current and future physical danger to child as factor relevant to best-interest determination); *In re E.R.W.*, 528 S.W.3d at 266 ("Mother's history of drug abuse bespeaks a course of conduct that the fact finder reasonably could conclude endangers [the child's] well-being."); *see also* Tex. Fam. Code Ann. § 263.307(b)(8) (considering whether children's family has history of substance abuse).

This evidence also weighs against Mother under the eighth, eleventh, and twelfth statutory factors, which consider whether Mother has a history of substance abuse, whether Mother is willing and able to effect positive environmental and personal changes within a reasonable period of time, and whether Mother demonstrates adequate parenting skills. Tex. Fam. Code Ann. § 263.307(8), (11), (12).

This factor supports the trial court's best-interest finding.

### C. Acts or Omissions of the Parent that May Indicate the Existing Parent-Child Relationship is Not Appropriate

Mother's inability to provide a safe home or enroll Lorenzo in school also support the trial court's best interest determination. *See In re M.R.*, 243 S.W.3d 807, 821 (Tex. App.—Fort Worth 2007, no pet.); *see also In re S.R.*, 452 S.W.3d at 366 (the fact finder may infer from past conduct endangering the children's well-being that similar conduct will recur if the children are returned to the parent).

The record shows that Mother tested positive for several drug tests and failed to complete at least four scheduled drug screenings during the pendency of the underlying suit to terminate parental rights. Additionally, Mother did not take advantage of opportunities and services provided by the Department to treat her substance abuse. This factor weighs in favor of the trial court's best-interest finding.

### D. Parental Abilities of Those Seeking Custody, and Stability of the Home or Proposed Placement

The factors concerning the parental abilities of those seeking custody, and the stability of the home or proposed placement compare the Department's plans and proposed placement of the children with the plans and home of the parent seeking to avoid termination. *See In re D.R.A.*, 374 S.W.3d at 535.

Palmer testified that both children are in the same foster home with parents that are meeting their physical and emotional needs. The foster parents are willing to adopt both children and the children have expressed desires to stay with the foster parents and be adopted by them.

On the other hand, the record does not contain any evidence suggesting that Mother would be able to provide a long-term safe and stable environment. This consideration strongly supports the trial court's best interest determination.

Viewing the evidence in the light most favorable to the judgment for our legal

18

sufficiency analysis and all the evidence equally for our factual sufficiency analysis, we conclude that a reasonable fact finder could have formed a firm belief or conviction that termination of Mother's parental rights was in the children's best interest. *See* Tex. Fam. Code Ann. § 161.001(b)(2). We overrule Mother's challenge to this finding.

Having determined that Mother is not entitled to rendition of judgment based on legally-insufficient evidence, we turn to Mother's complaints that, if sustained, would result in remand for a new trial.

## III.    Finding of Fact and Conclusions of Law

In her first issue on appeal, Mother contends reversal of the trial court's order is required because the trial court failed to file findings of fact and conclusions of law. When the circumstances of a case require an appellant to guess the reason the court ruled as it did, harm in the failure to file findings of fact may exist. *In re J.I.T.P.*, 99 S.W.3d 841, 848–49 (Tex. App.—Houston [14th Dist.] 2003, no pet.).

In a termination case such as this, the parent does not have to guess the reasons for the trial court's termination order because they are clearly stated in the order. *In re D.H.*, No. 2-05-179-CV, 2006 WL 133523, at \*2 (Tex. App.—Fort Worth Jan. 19, 2006, no pet.) (mem.op.). A trial court generally must file findings of fact separately rather than recite them in the trial court's judgment. *See* Tex. R. Civ. P. 299a; *In re A.A.M.*, No. 14-05-00740-CV, 2007 WL 1558701, at \*3, n.3 (Tex. App.—Houston [14th Dist.] May 31, 2007, no pet.) (mem. op.). But, Texas Rule of Civil Procedure 306, entitled "Recitation of Judgment," requires that the trial court state in its final termination order the specific grounds for termination. *See* Tex. R. Civ. P. 306. In today's case, the trial court recited in its Final Order that the grounds for termination were the trial court's findings by clear and convincing evidence that Mother engaged in the conduct described in subsections (D), (E), and (O) of section

19

161.001(b)(1) and based on the court's finding that termination of Mother's parental rights was in the children's best interest. *See* Tex. Fam. Code § 161.001(b); Tex. R. Civ. P. 306. Because trial courts must recite the specific grounds for termination in their final termination orders, parties properly may assert appellate complaints against these grounds, and an appellate court has the power to grant appropriate appellate relief if, for example, the appellate court concludes that the trial evidence is legally insufficient to support a finding that was a ground for termination of the appellant's parental rights. *See* Tex. Fam. Code § 161.001(b); Tex. R. Civ. P. 306; *In re P.W.*, — S.W.3d — No. 14-18-01070-CV, 2019 WL 2352443 at *4 (Tex. App.—Houston [14th Dist.] June 4, 2019, no pet. h.); *In re C.M.C.*, 554 S.W.3d 164, 173 (Tex. App.—Beaumont 2018, no pet.).

Mother contends she cannot know upon what facts the trial court relied. However, as this court held in *In re J.I.T.P.*, 99 S.W.3d at 848–49, because a complete reporter's record was filed, Mother was able to fully brief, and we were able to fully review, whether the judgment is supported by legally and factually sufficient evidence. *See also Roberson v. Robinson*, 768 S.W.2d 280, 281 (Tex. 1989) (holding that, when reporter's record is filed, trial court's findings may be challenged on both legal and factual sufficiency grounds). Therefore, the record affirmatively shows that Mother was not harmed by the trial court's failure to file findings of fact and conclusions of law. We overrule Mother's first issue.

## IV.    Citizenship Status

In Mother's fourth issue she argues that the trial court violated her rights to equal protection under the 14th amendment to the United States Constitution and Article 1, section 3a of the Texas Constitution when the trial court "terminated [Mother's] parent-child relationship after testimony by a case worker of the [Department] that a parent would be unfit if the parents' country of origin was not

the United States." Mother raised this issue in her motion for new trial by asserting that the trial court "impermissibly considered testimony about [Mother]'s legal immigration status to terminate her parental rights."

We first note that the record does not reflect evidence, or even mention, of Mother's immigration status during the trial. There were two alleged fathers of the children who did not appear at trial but were represented by counsel. On cross-examination, counsel for Lorenzo's alleged father asked the caseworker the following:

> Q. And Mr. [M.] did not do anything to bring his children – or his child into care, did he?
>
> A. No[t] to my knowledge, no.
>
> Q. And would it be your opinion that if he is found to be the father of his child, that he should have an opportunity to parent this child?
>
> [Objection overruled]
>
> A. I believe there are concerns with citizenship status.
>
> \*\*\*\*\*
>
> THE COURT: What kind of concerns?
>
> THE CASEWORKER: Mr. [M.] is not of American status and the children were born here, so.
>
> ["Nonresponsive" objection sustained]
>
> A. Based on his completion of the family plan, I don't know anything about this individual and his life in Honduras. It's possible.

In subsequent cross-examination, counsel asked Palmer the following:

> Q. Is it your knowledge that if a parent is not a citizen of the United States that they won't have the ability to parent their children if the children are – were born in the United States, is that –
>
> A. No.
>
> Q. Okay. So, that wouldn't be a deterrent; is that what you're stating?

21

A.     If reunification was possible with Mr. [M.], I'd have to staff that with my supervisor because I don't know how cross borders work when one's – they're of different citizenship statuses. I don't know what works.

The record does not reflect Mother's immigration status and does not reflect that the trial court considered her "country of origin" in making its findings.

The Equal Protection Clause provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a directive that all persons similarly situated should be treated alike. U.S. Const. amend. XIV, § 1; *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). The same requirements are applied under the Texas Constitution as under the United States Constitution. *Reid v. Rolling Fork Pub. Util. Dist.*, 979 F.2d 1084, 1089 (5th Cir.1992); *Rose v. Doctors Hosp.*, 801 S.W.2d 841, 846 (Tex.1990). To assert an equal-protection claim, however, a party must establish that the challenged statute resulted in her being treated differently than other similarly situated parties. *In re J.M.C.*, 109 S.W.3d 591, 597 (Tex. App.—Fort Worth 2003, no pet.); *Sanders v. Palunsky*, 36 S.W.3d 222, 225 (Tex. App.—Houston [14th Dist.] 2001, no pet.).

Immigration status, standing alone, is not probative of a parent's fitness to be a parent to her children so as to deny her joint managing conservatorship. *See Turrubiartes v. Olvera*, 539 S.W.3d 524, 529 (Tex. App.—Houston [1st Dist.] 2018, pet. denied) (citing *TXI Transp. Co. v. Hughes*, 306 S.W.3d 230, 241–42 (Tex. 2010) (immigration status was collateral matter "not relevant to proving a material issue in the case")). However, Mother has presented no evidence that her immigration status was considered by any representative of the Department or the trial court during the pendency of the parental termination case.

In addition to the testimony about the immigration status of one of the alleged fathers Mother argues that her ability to complete the service plan was hampered by

22

her inability to communicate with the caseworker in Spanish. The record contains a copy of Mother's family service plan written in English. The record does not contain a service plan written in Spanish. The record reflects, however, that each time Mother appeared in court a Spanish-language interpreter was employed to interpret the proceedings. Mother claims that she was unable to complete her service plan due to her inability to communicate effectively with the caseworker. Mother demonstrated that she understood the tasks required by the service plan because she completed some of them. Mother admitted into evidence an English-language text message exchange between her and the caseworker in which they discussed visitation. As the finder of fact and sole judge of the credibility of the witnesses, the trial court was free to believe that Mother was able to effectively communicate with the caseworker, and disregard any or all of Mother's self-serving testimony. *See In re S.A.H.*, 420 S.W.3d 911, 927 (Tex. App.—Houston [14th Dist.] 2014, no pet.). We overrule Mother's fourth issue.

## IV.    Admission of Drug Screening Evidence

In Mother's sixth issue she contends the trial court committed fundamental error by allowing evidence of her drug screening results in violation of the Fourth and Fifth Amendments to the United States Constitution and Article 1, section 9 of the Texas Constitution. Mother argues that evidence of her drug screening results should have been excluded because the Department did not produce a warrant or reasonable suspicion to request that she take a drug test.

At trial the Department called the custodian of records for the Texas Alcohol and Drug Testing Service who testified that the drug test results were records made in the ordinary course of business by a person with personal knowledge of the information. The custodian of records further testified that the records were made at the time the specimens were collected. The Department introduced the results into

evidence, Mother's attorney reviewed them, and stated that he had no objection. By failing to object to the drug test results Mother failed to preserve this issue for review.

To preserve a complaint for appellate review, an appellant must show (1) she made the complaint to the trial court by a timely request, objection, or motion, and (2) the trial court ruled on the request or refused to rule on the request and appellant objected to the refusal. *See* Tex. R. App. P. 33.1(a); *In re A.L.H.*, 515 S.W.3d 60, 82 (Tex. App.–Houston [14th Dist.] 2017, pet. denied). Mother did not object to the admission of the drug test results. To the contrary, her lawyer affirmatively said he had no objection to the admission of the results. Accordingly, Mother has not preserved error regarding admission of the drug screening evidence. *See In re W.T., III*, No. 14-17-00136-CV, 2017 WL 3567786, at *5 (Tex. App.—Houston [14th Dist.] Aug. 17, 2017, no pet.) (mem. op.).

Even if Mother preserved error at trial, the evidence is not subject to exclusion under the United States or Texas Constitutions. The United States Supreme Court has repeatedly declined to extend the exclusionary rule to proceedings other than criminal trials. *Pennsylvania Bd. of Prob. & Parole v. Scott*, 524 U.S. 357, 363 (1998) (declining to apply rule in parole-revocation hearing); *United States v. Leon*, 468 U.S. 897, 909 (1984); *INS v. Lopez-Mendoza*, 468 U.S. 1032, 1050 (1984) (declining to apply rule in civil-deportation proceeding); *United States v. Janis*, 428 U.S. 433, 447 (1976) (declining to apply rule in civil-tax proceeding); *United States v. Calandra*, 414 U.S. 338, 343–46, 349–50 (1974) (declining to apply rule in grand-jury proceeding). The exclusionary rule has been described as "a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved." *Calandra*, 414 U.S. at 348.

24

The Texas Supreme Court has likewise declined to extend the exclusionary rule beyond criminal trials. *State v. One (1) 2004 Lincoln Navigator*, 494 S.W.3d 690, 694 (Tex. 2016) ("Both the Fourth Amendment to the United States Constitution and Article I, section 9 of the Texas Constitution prohibit unreasonable searches and seizures and require the exclusion of evidence obtained in violation of that prohibition in *criminal* trials.") (emphasis added).

Mother further argues that the trial court should not have admitted evidence of the drug screening results because she was not given *Miranda* warnings before she submitted to a drug test. In *Miranda v. Arizona*, 384 U.S. 436, 444 (1966), the United States Supreme Court held that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." The Court defined "custodial interrogation" as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Id.* There is no evidence that Mother was taken into custody before submitting to drug screening or that she was deprived of her freedom of action in any significant way. Therefore, the Department was not required to issue *Miranda* warnings to Mother before asking her to submit to a drug test.

The trial court did not err in admitting evidence of Mother's drug test results in this civil proceeding. *See One (1) 2004 Lincoln Navigator*, 494 S.W.3d at 694. We overrule Mother's sixth issue.

## CONCLUSION

The evidence is legally and factually sufficient to support the trial court's predicate termination finding under section 161.001(b)(1)(E) and the finding that termination was in the best interest of the children. We overrule Mother's challenges

25

to the sufficiency of the evidence, the failure to file findings of fact and conclusions of law, and Mother's evidentiary challenges. We affirm the trial court's "Final Decree of Termination."

/s/ Ken Wise
Justice

Panel consists of Justices Wise, Jewell, and Hassan (Hassan, J., dissenting opinion to follow).