

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-22-00065-CV

MCCARTT & ASSOCIATES, INC., AND 79101 PROPERTIES, LP, APPELLANTS

V.

CHARLES LADELL ROBERTS, APPELLEE

On Appeal from the 108th District Court
Potter County, Texas
Trial Court No. 107405-E-CV, Honorable David L. Gleason, Presiding

January 17, 2023

## MEMORANDUM OPINION

Before PARKER and DOSS and YARBROUGH, JJ.

Appellants, McCartt & Associates, Inc., and 79101 Properties, LP (hereafter McCartt & 79101 Properties), through their original brief and reply brief present three issues challenging the trial court's judgment in favor of Appellee, Charles Ladell Roberts, in his premises liability suit against them. By their first issue, they challenge the legal and factual sufficiency of the evidence supporting the proximate cause element of Roberts's claim. By issue two, they contest the legal and factual sufficiency of the evidence to support the jury's finding of a concealed danger. Finally, by issue three, they contend the

jury's finding that Roberts was not negligent is against the great weight and preponderance of the evidence. We affirm.

## BACKGROUND

On September 26, 2016, Roberts, a security camera installer for American Protective Services (APS), was dispatched to a building owned by 79101 Properties and managed by McCartt to repair cameras located in the basement. At the time, the building was undergoing renovations. Roberts had previously worked for APS as a security guard and was familiar with the building in question.

In preparation for the repairs, Roberts loaded his equipment and a ladder into the freight elevator, which had been manufactured in the early 1960s. When he first entered the elevator, he pulled a handle but the elevator doors did not close. He then attempted to close the doors by pulling on the bottom ledge of the top door with his right hand. When the doors did not close as intended, he reached up with his left hand, placed it over his right, and applied his body weight to pull the doors shut. The top and bottom doors slammed and his left hand was trapped and crushed. He sustained a broken hand which required several surgeries and physical therapy. He was unable to work for approximately seven months. After reaching his maximum medical improvement, he was assessed with a twelve percent physical impairment rating. Although he was able to return to work as an installer, he sometimes required the assistance of another employee to perform some of his work.

Roberts sued McCartt and 79101 Properties for his injuries on a theory of premises liability.[1] Each side presented expert testimony on the operation and condition of the freight elevator and other witnesses offered testimony on various subjects. Numerous exhibits related to the operation of the elevators were also admitted. After presentation of all the evidence, the case was submitted to a jury via a charge proposed by Roberts and unobjected to by either 79101 Properties or McCartt. Question 1 asked the jury the following:

> Did the negligence, if any, of those named below proximately cause the injury in question?
>
> With respect to the condition of the premises, 79101 Properties, LP and/or McCartt & Associates, Inc. were negligent if—
>
> 1. the freight elevator door posed an unreasonable risk of harm, and
>
> 2. 79101 Properties, LP and/or McCartt & Associates, Inc. knew or reasonably should have known of the danger, and
>
> 3. the danger was concealed[,] and
>
> 4. 79101 Properties, LP and/or McCartt & Associates, Inc. failed to exercise ordinary care to protect Charles Roberts from the danger, by both failing to adequately warn Charles Roberts of the freight elevator door and failing to make the freight elevator door reasonably safe.
>
> ***
>
> Answer "Yes" or "No" for each of the following:
>
> 1. 79101 Properties, LP/McCartt & Associates, Inc.    Yes
>
> 2. Charles Roberts                                    No
>
> 3. Amarillo Protective Services, LLC                  No

---

[1] Roberts also sued American Elevator Services who performed maintenance on the freight elevator. However, summary judgment was granted in favor of American Elevator Services, and it is not a party to this appeal.

3

The jury was thereafter asked to attribute the percentage of responsibility found in Question 1 to each party. The jury found McCartt and 79101 Properties "100%" responsible. By the final question in the charge, the jury was asked to determine what amount would fairly and reasonably compensate Roberts for his injuries. The jury awarded him a total of $700,000.[2]

## APPLICABLE LAW—PREMISES LIABILITY

A premises liability claim is a special form of negligence where the duty owed to a plaintiff depends on the status of the plaintiff at the time the incident occurred. *Western Invs., Inc. v. Urena*, 162 S.W.3d 547, 550 (Tex. 2005). An owner or occupier of land generally has a duty to use reasonable care to make and keep the premises safe for business invitees. *Primrose Operating Co. v. Jones*, 102 S.W.3d 188, 195 (Tex. App.—Amarillo 2003, pet. denied).

The elements of a premises liability claim are as follows:

(1) the premises owner or occupier had actual or constructive knowledge of some condition on the premises;

(2) the condition posed an unreasonable risk of harm;

(3) the owner or occupier did not exercise reasonable care to reduce or to eliminate the risk; and

(4) the owner or occupier's failure to use such care proximately caused the plaintiff's injuries.

---

[2] A breakdown of the damages is unnecessary as the amounts are not challenged on appeal.

4

*See United Scaffolding, Inc. v. Levine*, 537 S.W.3d 463, 471 (Tex. 2017) (detailing requirements of a landowner's duty to an invitee to use ordinary care to reduce or eliminate an unreasonable risk of harm by a premises condition).

STANDARD OF REVIEW FOR LEGAL AND FACTUAL SUFFICIENCY

Under a legal sufficiency standard, we consider all of the evidence in the light most favorable to the prevailing party, make every reasonable inference in that party's favor, and disregard contrary evidence unless a reasonable factfinder could not disregard that evidence. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). A legal sufficiency challenge may only be sustained when the record discloses (a) a complete absence of evidence of a vital fact, (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla of evidence, or (d) the evidence conclusively establishes the opposite of the vital fact in question. *Id.* at 810. Evidence does not exceed a scintilla if it is so weak as to do no more than to create a mere surmise or suspicion that the fact exists. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004).

In a factual sufficiency review, the appellate court considers all of the evidence in the record in a neutral light and sets aside the jury's verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *See Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986). When an appellant challenges an adverse finding on an issue on which it did not have the burden of proof at trial, we set aside the verdict only if the evidence supporting the finding is so weak as to make the verdict clearly wrong and manifestly unjust. *See id.; Reliant Energy Servs., Inc. v. Cotton Valley Compression*,

5

*L.L.C.*, 336 S.W.3d 764, 782 (Tex. App.—Houston [1st Dist.] 2011, no pet.). When, as here, an appellant contests an adverse finding on an issue on which it did have the burden of proof at trial, an appellant must demonstrate on appeal that the adverse finding is against the great weight and preponderance of the evidence. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001); *Reliant Energy Servs., Inc.*, 336 S.W.3d at 782.

**ISSUE ONE—LEGALLY AND FACTUALLY INSUFFICIENT EVIDENCE OF PROXIMATE CAUSE**

Proximate cause consists of the elements of cause-in-fact and foreseeability. *IHS Cedars Treatment Ctr. of Desoto, Texas, Inc. v. Mason*, 143 S.W.3d 794, 798–99 (Tex. 2004). Generally, causation is within the province of the jury and may be disregarded only in exceptional circumstances. *Garcia v. Workman*, No. 07-01-00169-CV, 2002 Tex. App. LEXIS 1103, at *6 (Tex. App.—Amarillo Feb. 12, 2002, no pet.) (mem. op.).

It is undisputed that Roberts was an invitee in the building at the time of his injury. McCartt and 79101 Properties dispute the jury's finding that their negligence was the proximate cause of Roberts's injury. They assert there is no evidence or factually insufficient evidence to show the elevator doors caused Roberts's left hand to become trapped and crushed. We disagree.

According to the experts, the elevator safety code requires a freight elevator to have a compliant pull strap and a compliant astragal.[3] The "Glossary of Terms" of the National Elevator Industry Educational Program defines a "pull strap" as "straps secured to the inside and outside of the upper panel of manually operated vertical bi-parting freight

---

[3] The code is from the American Society of Mechanical Engineers and regulates safety for elevators.

6

doors."  A compliant pull strap allows the operator of the elevator doors to pull the strap down and away from the closing doors.

The Glossary of Terms defines an "astragal" as follows:

> A molding on the leading edge of hoistway and car doors.  Usually a rubber molding extending the full height on center-opening doors, or a rubber molding running the full width of the upper panel on bi-parting freight type doors.  It is furnished to reduce the effects of injury, should something get caught between door panels, and as they reach their fully closed position, quiet the operation of the doors.

Essentially, an astragal acts as a buffer or safety zone when the freight elevator doors close to avoid a crushing or shearing injury.

A building owner is required to have elevators inspected annually for compliance and for the issuance of a Certificate of Compliance.  TEX. HEALTH & SAFETY CODE ANN. § 754.019.  In 2005, and again in 2007, the elevator in question was cited for a non-compliant pull strap and a non-compliant astragal.[4]  McCartt's property manager acknowledged the violations and advised the Texas Department of Licensing and Regulation by letter that arrangements had been made to remedy the violations.

According to Roberts's expert, instead of a rubber astragal, the elevator was equipped with a "sheet of flat steel bent" with cardboard and "some kind of strips."  He concluded the device was "bogusly rigged in an attempt to create something that doesn't exist and is not compliant on an elevator door."  The metal piece on the bottom of the top

---

[4] According to the evidence, between 2009 and 2015, elevator inspectors did not issue any citations for the pull strap or the astragal.  A Certificate of Compliance issued on October 14, 2015, was in effect at the time of the accident.

door overlapped the top of the bottom door which created a shearing hazard which he analogized to the operation of a guillotine.[5]

The expert for McCartt and 79101 Properties agreed the elevator doors did not have a "normal astragal." She testified that the two-inch metal strip and cardboard may have been considered an astragal when installed in the 1960s when there was no elevator safety code. She acknowledged that by current standards, the device was not an astragal. She conceded that the pull strap was not in compliance with code requirements. She agreed during cross-examination that the astragal also was not in compliance with the code. She testified that modernizing older elevators is problematic and expensive.

During his testimony, Roberts wavered on whether he used the pull strap in attempting to close the elevator doors. Although he could not remember how his injured hand became trapped between the doors, he testified the doors were hard to close which caused him to use both hands and his body weight to try and close them. Although he admitted "anybody who purposely put their [sic] hand in that door would be insane," when reviewed in context, his testimony revealed he did not *purposely* place his hand in between the elevator doors. (Emphasis added). His left hand became trapped when he struggled to close the doors and was forced to use both hands and his body weight.

Whether Roberts used the non-compliant pull strap is irrelevant because there is ample evidence that a non-compliant astragal was the proximate cause of the crushing injury he sustained. Roberts's expert was retained to testify regarding the operation and

---

[5] The evidence shows that Roberts's wedding ring likely prevented his fingers from being severed when the doors slammed on his hand.

8

condition of the elevator doors; however, he concurrently offered testimony on causation. During cross-examination, he stated, "[a]ll we know is that [Roberts] sustained injury based upon the operation of the door." He also confirmed that a compliant astragal instead of a metal shearing hazard would have created a bumper and a space of at least three-quarters of an inch between the top and bottom door which would have prevented a crushing injury.

McCartt and 79101 Properties assert that a compliant astragal would not have eliminated Roberts's injury but instead would have only reduced the effects of the injury as testified to by their expert. However, Roberts's expert added on several occasions that a compliant astragal would have "eliminated" a crushing injury because Roberts's hand would not have become trapped if a buffer had been in place to prevent the top door from making contact with the bottom door. Presented with conflicting evidence on the purpose of an astragal, the jury was free to determine whether a compliant astragal would have eliminated or simply reduced the effect of Roberts's injury. *City of Keller*, 168 S.W.3d at 819–20. In a case such as this where it was not possible to produce direct proof of proximate cause or lack of proximate cause, the jury had broad latitude to infer foreseeability and cause-in-fact from a rigged astragal which posed a shearing hazard and thus satisfied the proximate cause element of Roberts's premises liability claim. *See THI of Tex. at Lubbock I, LLC v. Perea*, 329 S.W.3d 548, 578–79 (Tex. App.—Amarillo 2010, pet. denied). Issue one is overruled.

**ISSUE TWO—LEGALLY AND FACTUALLY INSUFFICIENT EVIDENCE OF CONCEALED DANGER**

Generally, a premises owner has a duty to an invitee to exercise reasonable care to either "make safe or warn against any concealed, unreasonably dangerous conditions of which the landowner is, or reasonably should be, aware but the invitee is not." *Austin v. Kroger Tex., L.P.*, 465 S.W.3d 193, 203 (Tex. 2015). An owner generally has no duty to warn of hazards that are open, obvious, or known to the invitee." *Id.* at 204.

Usually, whether a danger is open and obvious is a question of law determined under an objective test. *Los Compadres Pescadores*, *L.L.C. v. Valdez*, 622 S.W.3d 771, 788–89 (Tex. 2021) (citing *Caterpillar, Inc. v. Shears*, 911 S.W.2d 379, 383 (Tex. 1995)). Here, however, the issue of a concealed danger was submitted to the jury without objection from either McCartt or 79101 Properties. The question is whether the danger is "so open and obvious that as a matter of law [the plaintiff] will be charged with knowledge and appreciation thereof." *Los Compadres Pescadores*, 622 S.W.3d at 788 (citing *Parker v. Highland Park*, *Inc.*, 565 S.W.2d 512, 516 (Tex. 1978)). Under the objective standard, the question is not what the plaintiff subjectively or actually knew but what a reasonably prudent person would have known under similar circumstances. *Tex. Dep't of Human Servs. v. Okoli*, 440 S.W.3d 611, 614 (Tex. 2014). To properly apply an objective test, we must consider the "totality of" the "particular circumstances the plaintiff faced." *State v. One (1) 2004 Lincoln Navigator*, 494 S.W.3d 690, 706 (Tex. 2016).

Experts for both sides agreed that the astragal in the freight elevator was not in compliance with the safety code. McCartt and 79101 Properties were aware that the non-compliant astragal had been cited in 2005 and 2007 and had not been made to conform

10

to code requirements at the time of the accident. The evidence established the lack of a compliant astragal caused Roberts's hand to become trapped in between the elevator doors and posed a crushing and shearing hazard.

There was evidence that when Roberts was a security guard, he was trained to make sure the freight elevator doors were closed at night. But he was instructed by the individual who trained him only on how to close the doors from the outside. That individual testified he never showed Roberts how to operate the freight elevator from the inside.

During its deliberations, the jury presented the trial court with a note asking for the legal definition of "concealed." The court responded to apply the normal and customary meaning. The definition of "concealed" is "hidden from view." *See merriam-webster.com/dictionary/concealed.*

The danger presented by the elevator doors was apparent only when the doors closed and the metal plates would compress and overlap creating a crushing and shearing hazard. Such a danger was "hidden from view" and not open and certainly not obvious to an invitee operating the freight elevator doors.

After Roberts's injury, maintenance technicians were dispatched to the elevator to determine why the accident had occurred. They did not notice anything obvious about the condition of the elevator and did not observe anything out of compliance. Such evidence reinforces that the danger presented from a non-compliant astragal was concealed. The evidence presented was legally and factually sufficient to support the jury's finding that the danger presented by the elevator doors was concealed. Issue two is overruled.

**ISSUE THREE—JURY'S FINDING THAT ROBERTS WAS NOT NEGLIGENT**

McCartt and 79101 Properties contend in a brief and conclusory assertion that Roberts was negligent because "he placed his hand between the closing doors of the freight elevator and . . . this proximately caused his injury." They maintain the jury's refusal to find Roberts guilty of negligence is against the great weight and preponderance of the evidence because he knew the danger of placing his hand between the elevator doors and did so anyway. We disagree.

Negligence "means the doing of that which a person of ordinary prudence would not have done under the same or similar circumstances." *20801, Inc. v. Parker*, 249 S.W.3d 392, 398 (Tex. 2008). When a party attacks the factual sufficiency of an adverse finding on an issue on which he has the burden of proof, he must "demonstrate on appeal that the adverse finding is against the great weight and preponderance of the evidence." *Dow Chem.*, 46 S.W.3d at 242. The court of appeals is required to weigh all of the evidence and can set aside a verdict only if the evidence is "so weak or if the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust." *Id.* (citing *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986)).

Although Roberts testified that "anybody who purposely put their [sic] hand in that door would be insane," his testimony shows that he did not "purposely" place his hand between the elevator doors. He encountered difficulty in closing the doors when he used only his right hand to try to pull the upper door downward. When the doors did not close, he then placed both hands at the bottom of the upper door and pulled down with his body

weight.  When the doors closed, his left hand became trapped and was crushed because of the absence of a rubber astragal which would have provided a buffer.

It is not inconceivable that a person of ordinary prudence who struggled to close the elevator doors with a handle or strap may have had to resort to using both hands to pull the doors closed.  Weighing all of the evidence, as we must, we find that Roberts did not "purposely" place his left hand between the doors and agree with the jury's finding that he was not negligent.  The jury's decision is not so against the great weight and preponderance of the evidence as to be clearly wrong and unjust.  Issue three is overruled.

## CONCLUSION

Recognizing that an appellate court may not substitute its judgment for that of the jury on the issues presented and resolved herein, the trial court's judgment is affirmed. *See Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 407 (Tex. 1998).


Alex L. Yarbrough
Justice

13